[Crim. No. 4895.   Second Dist., Div. Two.   Feb. 18, 1953.]

THE PEOPLE, Respondent, v. RICHARD WOOD HILL, Appellant.

Homer H. Gooing for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted of violating section 501 of the Vehicle Code, a felony, in that he unlawfully drove an automobile while under the influence of intoxicating liquor whereby he caused bodily injuries to four persons. His motion for a new trial was denied. He was placed on probation for five years, one of which he was required to spend in the county jail. He has appealed from the order denying his motion on three grounds: (1) that the evidence is insufficient to warrant his conviction of violating section 501; (2) error in not reducing the offense to a violation of section 502, and (3) prejudicial error in the court's commenting on the evidence to the jury.

About 9 o'clock on the rainy evening of March 6, 1952, Edward J. Frisch drove from a church on 18th Street in the fourth block north of Whittier Boulevard in Montebello for the purpose of conveying his son and the latter's two friends, Ronnie Davis and Bobby Andrews, to their homes south of Whittier Boulevard. The latter highway connects the city of Los Angeles with Montebello, Whittier and points in Orange County. From the church they drove south on 18th Street, made a left-hand turn onto Whittier Boulevard and entered the lane nearest the south curb. After going east one block and passing Vail Street, the car driven by appellant suddenly loomed ahead of them going west in their lane of travel. In order to avoid collision, Mr. Frisch turned to the left whereupon the rear portion of the right side of his automobile was struck by appellant's car. As a result of the collision the boys sustained serious injuries—either broken limbs, contusions or lacerations of face and leg—and Mr. Frisch sustained compound skull fractures and lacerations of face and leg and at the time of the trial, June 17, 1952, was still

hospitalized in the mental ward of the Veterans' Hospital and did not testify.

Appellant contends there was no basis for his conviction other than inferences. Such is not a fair appraisal of the proof. Ronnie Davis testified that on leaving the Boy Scout meeting at the church, they drove south to Whittier Boulevard, turned left and traveled in the southernmost lane of the boulevard until the collision. While he could not name the street on which they travelled south, he identified two establishments on Whittier Boulevard which definitely proved that their travel on the boulevard commenced at 18th Street, one block west of Vail. Ronnie testified that when he saw the two headlights of an automobile approaching him in their lane of travel, he braced himself. His testimony was corroborated by that of Sergeant Mullins of the Marine Corps who was driving westward along the boulevard in the lane by the center line when he observed taillights of an automobile on his left and about 150 yards ahead of him at about Vail Street. On arriving at Vail he saw the two automobiles which had crashed and the bruised bodies of Mr. Frisch and one of the boys lying on the ground. The sergeant approached appellant still seated behind his wheel. In answer to an inquiry as to whether he was all right, appellant mumbled incoherently, "How are you, buddy?" His breath had the odor of alcohol. When the police car arrived and appellant was removed from his automobile, Mullins saw that he was staggering, but observed that he had suffered no injuries in the collision. It was the opinion of Sergeant Mullins and ·of the police who arrested appellant that he was under the influence of liquor. In answer to an inquiry as to whether he had been drinking whiskey, beer and wine, he said, "everything." He stumbled as he left his automobile and staggered as he walked to the police car some 60 feet distant. At the trial appellant stated that he had worked a long day, stopped to visit friends and previously had had three drinks of whiskey and soda.

In fact, appellant makes no serious contention with reference to his intoxication, but bases his right to a reversal on the ground that there was no definite evidence that his vehicle was on the left side of the highway when it struck that of Mr. Frisch on its right-hand side. He contends that *he* was driving easterly on Whittier Boulevard and that Mr. Frisch going west on the same highway made a sudden left turn resulting in the collision. Such contentions were rejected by the jury which apparently concluded from the testimony of Sergeant

Mullins and Ronnie Davis that the collision took place just east of Vail and in the southernmost lane of the highway, and that the Frisch car was the one going east. By the jury's adoption of the evidence of such witnesses and that of the police officers who found the Frisch car upon the sidewalk on the south side of the boulevard, the prosecution had sustained the burden of proof. Inasmuch as appellant was driving on the left-hand side of the road just before the accident, an unlawful act (*People* v. *Tucker,* 88 Cal.App.2d 333, 338 [198 P.2d 941]), he was properly accused and convicted of violating section 501, *supra.*

The fact that the defense introduced evidence which furnished a sharp conflict with that presented by the prosecution does not make appellant any the less guilty so long as he was disbelieved and the testimony of the witnesses for the People was accepted. ■ This court is bound by the factual determination made by the jury on substantial evidence, and approved by the trial judge. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) ■ There were other facts proved from which inferences favorable to the judgment might reasonably have been drawn. The boys resided south of the boulevard. To reach their homes it was a natural and logical course for Mr. Frisch to pursue the route described by Ronnie. Also, appellant's car was in the south lane prior to the collision, and it was there afterwards. The facts that it was facing southwest, stood 25 feet from Vail and that the Frisch car came to rest on the sidewalk at the southeast corner of Vail have just such evidentiary value as the jury chose to attach to them. When two automobiles crash on a wet pavement, the distance and direction of their subsequent movements depend upon the respective speed, power and weight of the cars, the amount and nature of surface debris, and the smoothness or roughness of the street surface. But howsoever the jury might have reasoned, it is clear that their logic was too sound to accept appellant's narrative that while he was going east his radiator was broken in by striking the right side of an automobile as it turned to the left and his vehicle wound up after a 180-degree spin to the east of the one he had struck in its turning. It is far more rational to reason as the jury did: appellant was traveling west in the south lane; his front end collided with the car of Mr. Frisch and was damaged in the radiator as Mr. Frisch attempted to avoid the impact by turning whereby he exposed the right rear of his vehicle. It is not reasonable that appellant's car

would have landed 25 feet east of Vail Street headed west if the Frisch car had turned in front of him at the intersection of Vail and Whittier. The physical facts indicate that appellant's automobile was heavier than that of Mr. Frisch. Appellant's contention that the legal presumptions establish his innocence is a vain effort to immunize himself by an odor of legality. Such presumptions are rebutted by positive evidence and the jury exercised its prerogative of choosing the evidence it preferred to rely upon (*People* v. *Tucker, supra*) and its choice was not unreasonable.

### REFUSAL TO REDUCE THE CRIME NOT ERROR

■■ It was not error for the trial court to refuse to reduce the crime defined by section 501 of the Vehicle Code to that defined by section 502. Section 501 makes it a felony for a person under the influence of intoxicating liquor so to drive a vehicle as to violate the law or to neglect a duty imposed by law and thereby proximately cause bodily injury to another person. Section 502 makes it a misdemeanor for any person "under the influence of intoxicating liquor to drive a vehicle upon any highway." Appellant conceives that his only fault lay in driving on the highway while intoxicated and that, therefore, the court was obligated to reduce his crime to a violation of section 502. He bases such contention upon section 1181, subdivision 6, of the Penal Code which provides that "if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the judgment accordingly . . ."

The answer to appellant's demand is twofold: First, the evidence shows that he was guilty as charged of injuring four other persons while driving drunk and on the left side of the highway; second, the statute is merely permissive. ■ Moreover, this court is powerless to interfere with the court's order denying the motion for a new trial unless the record clearly shows that as a matter of law the evidence excludes the greater offense. (*People* v. *Odle,* 37 Cal.2d 52, 58 [230 P.2d 345]; *People* v. *Thomas,* 25 Cal.2d 880, 905 [156 P.2d 7].) By reason of the substantial evidence of appellant's having driven on the left side of the highway and injured other persons, it is not within the power of this court to ignore such evidence and to act solely upon the admissions of appellant. (*People* v. *Newland, supra.*)

## No Prejudice Suffered by Virtue of Judge's Comment on the Evidence

In the course of the trial in reply to inquiries made by a juror who had said "that the Hill car was more or less going southeast, more or less sliding," the court replied, "Well, if I understand the officer correctly, counsel—correct me if I am in error—the indication was that those marks—they referred to as centrifugal skid marks—ran from about the curb to where the car was stopped; indicating that the car was moving in a southeasterly direction at the same time it made those marks or scrapes on the sidewalk . . . I see what your trouble is. Anything I may say, you will regard, of course, as just an effort to help you. You as jurors will have to arrive at your final conclusion. I think we can draw a reasonable inference, since the right side of the Frisch car was hit, that in some manner the cars were in such a position that the car of Mr. Hill did hit it on the right side. One of the other possible inferences we can draw is that when two objects come into collision that one object may be compelled to stop; in other words, be stopped by coming into collision; and the light object which is struck will drive ahead . . . All we can do is to use our best judgment and reasoning, keeping in mind cars sometimes, when they are struck, do peculiar things. In other words, we don't know at the present time a lot of things which you and I would like to know which we probably can't find out during the course of this trial as to whether the Frisch car had any motive power, whether the wheels were turning and causing it to go in some direction, whether it stopped, whether it went sideways, or forward, or how it got there; may have caromed around in almost any position imaginable.

"The Juror: That was one of the reasons—if they were turning east off of Vail, it would clarify it to me, more of a chance to hit it on the right-hand side during the course of the turn.

"The Court: It would depend upon a number of other things. We have to consider as possibilities, we don't have any evidence of it, but when we are relying upon a case in which we are limited as to evidence, we have to rely more or less on the circumstances and those things which naturally and reasonably happen; that is, it might be possible if you or I were driving a car and you saw headlights suddenly loom ahead of us we might turn our car one direction or another,

might be struck on the lefthand side—those are possibilities, as to which we have no proof at all. . . .''

Appellant contends that such comments constituted an irreparable prejudice to his cause. There is no basis for such contention. During the entire colloquy between the juror and the judge there was no objection made by appellant; neither did he assign any remarks of the court as prejudicial, nor did he ask them to be stricken and the jury to be admonished to disregard them. ■ When a litigant deems the comments of a court to be unwarranted, it is his duty promptly to object in order that the trial court may correct its error, if any. (*People* v. *Gosden,* 6 Cal.2d 14, 27 [56 P.2d 211]; *People* v. *Ottey,* 5 Cal.2d 714, 721 [56 P.2d 193].) By reason of his silence he waived his right to a review of the court's action on appeal. We may observe, however, that nothing was said by the judge in his answers to the inquiries of the juror that is not authorized by section 19 of article 6 of the Constitution which provides that the court may make such comment on the evidence and the testimony and credibility of a witness as it may deem necessary for the proper determination of the case. There is no suggestion as to how appellant might have been prejudiced by the court's comments. Finally, this appeal is not from the judgment, but from the order denying the motion for a new trial. At the time of his motion, appellant did not specify as a ground for his motion that the court had prejudiced him by comments upon the evidence. He thereby waived his right to have it considered on appeal. (*People* v. *McCoy,* 71 Cal. 395, 398 [12 P. 272]; *People* v. *Johnston,* 37 Cal.App.2d 606, 609 [100 P.2d 307].)

The order denying the motion for a new trial is affirmed.

McComb, J., and Fox, J., concurred.