[Crim. No. 4325.  First Dist., Div. Two.  Nov. 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WAL-
LACE DUNAWAY, Defendant and Appellant.

James Wallace Dunaway, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Michael J. Phelan, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant was found guilty by a jury of violating section 496 of the Penal Code, in that on May 25, 1962, he bought and received two outboard motors which he knew had been stolen. He appeals from the judgment of conviction.

The motors were stolen by Richard Bailey and Kenneth Bailey, his 16-year-old brother. They transported them to appellant's place of business, which he operated under the name of Diablo Boat Works. Appellant bought the motors from them for $50 and paid this amount by check to Richard Bailey.

*Sufficiency of evidence to establish knowledge of appellant that motors were stolen.*

The previous dealings between the Bailey boys and appellant commenced on May 11, 1962. Appellant had a 1952 Nash automobile for sale. The boys had an outboard motor which they had stolen. Appellant took the motor as a down-payment on the automobile.

On May 17, 1962, appellant bought another stolen outboard motor from the boys. He deducted the balance due on the Nash and gave Richard his check for $75.

The third transaction (May 25, 1962) is the basis of the charge herein. Thus, in a two-week period, appellant had bought and received four stolen outboard motors from two young men who were complete strangers to him.

Bills of sale were made out in each of the three transactions and signed by Richard Bailey as the seller. As the brothers were leaving appellant's shop after completing the

third transaction, appellant told them that if they were "going to bother with motors—why didn't we get the bigger ones." He explained to them that he wanted to start a boat rental business for water skiers at Lake Tahoe. He stated that he "couldn't give us full price on them, because they might be hot."

Appellant also furnished the boys with some blank bills of sale which could be filled out for any motors that they might steal. This was to avoid trouble if they were stopped while in possession of such stolen motors.

Both of the Bailey boys testified to the foregoing facts and they were corroborated at the trial by the three bills of sale covering the four stolen motors and the check given to them for the two motors upon which the charge herein is based.

Townley, appellant's employee, testified that he actually handled the first transaction, which involved the Nash, but that he consulted with appellant before closing it and got his approval. He stated that when the boys came in with the second stolen motor, he referred them to appellant and they closed the deal with him directly. He further testified that he had had nothing to do with the third transaction, which is the one charged.

Inspector Reed of the Antioch Police Department investigated the case. He learned from the Bailey boys that they had sold motors to the Diablo Boat Works. Reed interviewed appellant and his wife at their office.

Appellant stated that he had no knowledge of buying any outboard motors for resale, that all of the motors that he had were in the shop or on the boats which were in the yard outside and that these were on consignment.

When Reed told appellant that Richard Bailey had admitted stealing the motors and selling them to him, appellant denied knowing Bailey and repeated that he had no knowledge of buying any motors from him.

Appellant told Reed that all his records concerning motors were in a sales book. While appellant appeared to be looking through the papers on his desk, Reed noticed a bill of sale with the name Richard Bailey on it. Appellant had passed right by this paper but when Reed called his attention to it he backed up and looked at it. Appellant again stated that he did not know a Richard Bailey and that he couldn't figure out what the bill of sale was doing there. He said that Townley must have made the deal.

Appellant and Reed found two more bills of sale in the

pile of papers on the desk with Richard Bailey's name on them. Appellant produced his check ledger at Reed's request. It showed the issuance of two checks to Richard Bailey, on May 17, 1962 and May 25, 1962, respectively. Appellant again had no explanation except to say that Townley must have made the deals.

After further discussion, appellant "remembered" selling the motors to different individuals. Aided by this information, the police subsequently recovered the motors.

On the morning of the preliminary examination, appellant approached the mother of the Bailey boys and told her to tell Richard not to implicate appellant or he would involve her younger son, Kenneth.

Appellant did not testify except for the limited purpose of establishing that his wife was out of the state. Her testimony given at the preliminary hearing was thereupon read to the jury.

She testified that she was present when Inspector Reed came in the first time to inquire about the outboard motors; that Reed asked appellant "if he had bought outboard motors from Mr. Bailey"; that appellant replied that he didn't remember Bailey and that Townley did the buying and selling; that "my husband showed Officer Reed the checkbook and the bill of sales, and told him that he had no recollection of Richard Bailey. . . ."

She further testified that, at a later time, she was present when the Bailey brothers drove up with two motors in the back of their car. This was apparently the day of the third transaction, May 25, 1962, because she stated that "I guess it was on these last two motors. . . ." However, the subject was not developed any further and appellant's wife concluded her testimony with the statement that appellant was not good at remembering people's names or addresses.

Appellant called his 16-year-old nephew, Michael Weaver, who testified that he was present when the Bailey brothers brought a 35-horsepower Evinrude motor to the shop to sell and he saw appellant write out a check for it. (This was the so-called second transaction.)

Appellant's 15-year-old daughter, Shirley, testified that she was present when the third transaction occurred and saw her father write out the check for $50.

There is nothing in the testimony introduced by appellant which in any way refutes the prosecution's contention that appellant *knew* that the two motors which he bought on May 25, 1962, for $50 were stolen.

■ The following language in *People* v. *Boinus* (1957) 153 Cal.App.2d 618, 621-622 [314 P.2d 787], is applicable in the instant case: ''Although guilty knowledge of the fact that the property was stolen is an essential fact to be proved in a prosecution for receiving stolen property, such knowledge need not be that actual and positive knowledge which is acquired from personal observation of the fact. [Citation.] It is not necessary that the defendant be told directly that the property was stolen. [Citation.] Knowledge may be circumstantial and deductive. [Citation.]''

■ Appellant chose not to ''explain or to deny by his testimony any evidence or facts in the case against him.'' (Pen. Code, §§ 1323 and 1127; Cal. Const., art. I, § 13). The effect of this is stated by our Supreme Court in *People* v. *Adamson*, 27 Cal.2d 478, 489 [165 P.2d 3], as follows: ''Therefore the failure of the defendant to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.''

■ In our opinion, there is substantial evidence to support the implied finding of the jury that, at the time he purchased the two motors on May 25, 1962, appellant knew that they had been stolen.

*Were the bills of sale illegally seized?*

■ We have already related the circumstances under which appellant ''found'' the bills of sale on his desk and in Reed's presence.

When Reed had first gone into the office appellant was not there. His wife was apparently in charge and Reed stated his business to her. She called appellant at the repair shop and he came over.

Once appellant had ''discovered'' the bills of sale on top of his desk, he made no objection to Reed's examining them. Because of appellant's statement that Townley must have made these deals, Reed then left the office and went to interview Townley. After talking to him, Reed came back to the office.

Apellant had left but his wife was there, again in apparent charge of the office. Reed asked if he might have the bills of sale and she gave them to him, saying that ''they probably are no good anyhow, since the motors are stolen.''

Since the uncontradicted testimony shows that appellant's

wife freely consented to the release of the bills of sale and had either actual or apparent authority to do so, the bills of sale were not illegally obtained and were properly received in evidence. (*People* v. *Carter*, 48 Cal.2d 737, 746 [312 P.2d 665]; *People* v. *Dominguez*, 144 Cal.App.2d 63, 65 [300 P.2d 194]; *People* v. *Hughes*, 183 Cal.App.2d 107, 113-114 [6 Cal. Rptr.643]; *People* v. *Michael*, 45 Cal.2d 751, 752 [290 P.2d 852].)

■ Moreover, during the trial when the three bills of sale were handed to the appellant for inspection, he stated: ''Go ahead and offer them.'' They were then offered and admitted in evidence without objection. Appellant thus waived any objection to the manner in which these papers came into the possession of the prosecution.

### *Misconduct of trial judge*

■ Appellant insisted upon appearing in propria persona. He refused to have an attorney even though the court offered to appoint one without cost to him. When he repeatedly made statements that were completely out of order, the court admonished him to desist.

Appellant bases his claim of misconduct by the trial judge upon two instances in which reference was made to his ''experience.'' The first occurred during appellant's cross-examination of Kenneth Bailey.

The record is as follows: ''THE COURT: Now, no more asides, Mr. Dunaway; just stick to the questions—whatever you feel are pertinent here. MR. DUNAWAY: Well, your Honor, may I ask the Court this? When I was the one that was there, and know what happened, and he lies on the stand there—MR. MICKLES [prosecutor]: Objection, Your Honor—THE COURT: Just a second, Mr. Dunaway. MR. DUNAWAY: How can I defend myself if I can't prove it? THE COURT: I'm sure, Mr. Dunaway, you have had experience in presenting matters to the Court before. Now, you have been—MR. DUNAWAY: I'm not an attorney—I had not had experience.''

The second instance occurred during the prosecutor's cross-examination of one of appellant's witnesses. The record is as follows: ''MR. DUNAWAY: Well, I have this objection—that there is a state investigator here investigating Diablo Boat Works—THE COURT: Forget about the state investigator, Mr. Dunaway, please. MR. DUNAWAY: Well, Your Honor—THE COURT: Mr. Dunaway, please, you have had experience in this sort of thing before, and I've repeatedly

told you not to make these asides. Now, please don't do it again.''

The court in each instance was directing its admonition to the *asides* being made by appellant. Appellant had been admonished during the early stages of the trial, outside of the presence of the jury, not to engage in this type of conduct. It was evident throughout the trial that he was skillfully putting in these side remarks in an effort to have the jury consider them as though he were so testifying. We find no misconduct in the statements of the trial judge.

Moreover, no objection or motion to strike was made, nor was there a request to admonish the jury to disregard the alleged prejudicial remarks. Failure to take such action waives any objection to such remarks. (*People* v. *Hill,* 116 Cal.App.2d 212, 218 [255 P.2d 54]; *People* v. *Temple,* 102 Cal.App.2d 270, 282 [227 P.2d 500].)

*Presumption arising from buying or receiving stolen property from person under 18 years of age.*

The trial court gave the following instruction, based upon the last paragraph of section 496 of the Penal Code: ''Any person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft from any person under the age of 18 years, shall be presumed to have bought or received such property knowing it to have been so stolen and obtained, unless such property was sold by such minor at a fixed place of business carried on by the minor or his employer. This presumption may, however, be rebutted and overcome by proof.''

In *People* v. *Stevenson* (1962) 58 Cal.2d 794 [26 Cal.Rptr. 297, 376 P.2d 297], a judgment of conviction was reversed by reason of the giving of this same instruction. The Supreme Court stated, at page 798: ''Section 496 of the Penal Code is unconstitutional insofar as it provides for a presumption of guilty knowledge on the part of one who 'receives' stolen property from a minor under the age of 18, and the instruction based on that presumption was erroneous. The evidence bearing on guilty knowledge was sharply conflicting, and the error was prejudicial.''

The last sentence quoted above indicates that the court considered whether the giving of the erroneous instruction ''resulted in a miscarriage of justice.'' (Cal.Const., art. VI, § 4½.) It concluded that it did because the evidence in that case was ''*sharply conflicting.*'' (Italics ours.)

In the instant case, there was no such conflict. The only

testimony produced by appellant was that of his daughter, his nephew, and his wife. The wife was not present at the trial and so her testimony given at the preliminary hearing was used. None of this testimony raised any conflict with the evidence establishing appellant's guilt.

It can be fairly said that the only evidence opposed to appellant's guilt is the presumption of innocence.

Appellant's failure to take the stand and explain or deny the evidence introduced by the prosecution and his display of a consciousness of guilt when being questioned by Inspector Reed are elements not present in *People* v. *Stevenson, supra.*

There, the defendant did not *buy* the two hubcaps in question; he did not even "receive" them in the literal sense; as stated in the opinion, "the prosecution attributed to defendant statements from which it could be inferred that he had permitted Lawson to leave the hubcaps in his car, knowing that they were stolen." The defendant took the witness stand and denied making any statements which indicated that he knew the hubcaps were stolen. Lawson's testimony corroborated defendant.

Another important distinction is that, in the instant case, the buying and receiving of the stolen motors was from Richard Bailey, the older brother. The instruction did not apply to him, since he was over 18 years of age. While this does not eradicate the error in giving the instruction, it does have a bearing on whether such error resulted in a miscarriage of justice. We do not think that it did.

### Miscellaneous

There was no abuse of discretion in denying appellant's application for probation, particularly in the light of his past criminal record. (*People* v. *Duke* (1958) 164 Cal.App.2d 197, 199 [330 P.2d 239].)

Appellant contends that the information was not filed "within 15 days after the commitment." (Pen. Code, § 739.) The record shows that it was. The commitment was made on August 20, 1962, and the information was filed on September 4, 1962.

Appellant was arraigned on September 11, 1962. He was present but complains that he had not been given notice of the date. No prejudice to his rights resulted.

Appellant also mentions his right to a speedy trial. The trial was held on October 30 and 31, 1962 (see Pen. Code, § 1382) and there was no showing of any prejudice to appellant by not having an earlier trial.

■ The degree of the offense was not fixed. It does not have to be. Section 1157 of the Penal Code only applies to "a crime which is distinguished into degrees," such as murder, robbery, burglary, and theft. Section 496 of the Penal Code does not distinguish the offense proscribed therein into degrees.

Appellant may have in mind that the offense of which he was convicted might have been determined to be a misdemeanor instead of a felony. However, the court imposed as punishment the imprisonment of appellant in the state prison. The offense therefore remained a felony. (Pen. Code, § 17.)

■ Richard Bailey was in the United States Army. He gave his home address as 1017 West Fourth Street, Antioch, California. He testified that he was AWOL during the period when he was engaged in stealing motors. The court sustained an objection to appellant's question as to whether he was serving time in the Presidio. We see no error. Appellant does not claim that Bailey had been convicted of a felony. His contention is that he was entitled to impeach the credibility of Bailey by showing that he was in fact residing in the stockade at the Presidio instead of in Antioch. We do not think this is inconsistent with the testimony of Bailey as to his "home address." In any event, appellant suffered no prejudice by the sustaining of the objection.

Appellant in a general way accuses the prosecutor of misconduct but cites no specific instances nor does he call attention to any portion of the record upon which he bases his accusations.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.