[Crim. No. 5481.   First Dist., Div. Two.   Nov. 21, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS WALTER LARKE, Defendant and Appellant.

Thomas Walter Larke, in pro. per., and Robert L. Beery, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and James A. Aiello, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—A jury convicted defendant of receiving stolen property (Pen. Code, § 496) as charged in the third count of the information and acquitted him of grand theft and burglary as charged in the first and second counts.

Defendant makes only two contentions on appeal: (1) that his oral statements made to the police should not have been introduced in evidence because he was not represented by counsel at the time they were made and he had not been advised of his right to counsel; (2) that the trial court erred in advising the jury that it could consider the testimony respecting a cash register not admitted in evidence in determining the charge of receiving stolen property.

On February 4, 1965 defendant was under arrest and in the Marin County jail on a grand theft charge filed in Los Angeles County. This charge is not related to the charges

involved herein. He was questioned on that day by Inspector Cheetham of the San Rafael Police Department.

Cheetham testified that, at the start of this interview, he advised defendant "that he had a right to an attorney of his own choosing and his own expense; that any questions I ask of him he did not have to answer unless he should choose to do so, and that if he did answer my questions they would be taken down in writing and possibly used against him in court."

The forewarning to defendant as to his constitutional right to counsel did not satisfy the so-called *"Dorado* rule" *(People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]) because it carried with it the implication that such right could be exercised only if defendant had the financial means to employ counsel, thus negating his right to court-appointed counsel if he were an indigent.

However, the only testimony as to what was said at this interview was that defendant gave his residence address as 67 Olive Street, San Anselmo. Cheetham went there the same day but found no one at home. He then obtained a search warrant for the premises and returned the following day. (Undoubtedly the subject matter of this first interview concerned only the Los Angeles County theft charge.)

The search of the house and garage yielded a number of cash register parts and servicing equipment and five gasoline credit cards in the name of National Cash Register Company (hereafter NCR), all of which were identified by employees of NCR as having been stolen from NCR service trucks being operated in Marin County. The legality of the search and seizure is not in issue.

The testimony as to many of the items seized was that they were "similar" to those stolen from NCR but as to some of the items the identification was *positive,* being based upon markings, uniqueness or peculiarities of the items so identified.

We need not detail this testimony since no issue is raised as to the sufficiency of the evidence to support the jury's implied finding that defendant was in possession of stolen property, defendant's only defense being that he did not *know* that it was stolen. This, of course, is an essential element of the crime of which he was convicted.

Following the search Cheetham questioned defendant about the items seized. At the trial Cheetham was asked the following question and gave the following answer: "Q. [By the

prosecutor] Prior to having this conversation with the defendant you had advised him of his constitutional rights? A. I did.''

*Without objection*, Cheetham then related the conversation. The following occurred on cross-examination: ''Mr. Truett [defendant's counsel] : These then were all of the items that you removed from the garage on that occasion? A. Those were removed from the garage, yes. Q. Now, Officer Cheetham, you state that when you first commenced talking with Mr. Larke you immediately advised him that he had the right to counsel and so on, and you immediately advised him also of the fact that he could—he has the constitutional right to remain silent and that anything he might say could be held against him; is that correct? A. That is correct.''

It is apparent that the foregoing questions and answers were directed to the second interview, i.e., the one that took place *after* the search. Defendant's counsel had no reason to ask any questions about the first interview since it had no bearing on the issues being tried.

Defendant's own testimony indicates that he was properly advised of his constitutional rights at the commencement of the second interview. The record shows the following: ''Q. [By defendant's counsel] Did you have a conversation with Officer Cheetham with regard to these cash register parts and supplies and equipment? A. I had quite a few conversations with him. Q. And what did he advise you with respect to your rights? A. Well, every time he interviewed me it would always be the same thing. He would say, 'Hello', 'How do you do' or 'How are you feeling? Have a seat.' And then he would say, 'First of all, I have to advise you of your rights, that you are entitled to have a lawyer present of your choosing at any time, that you are not required to say anything, and that if you do say anything I can take it down in writing and it can be used as evidence against you later on.' ''

Assuming, however, that Cheetham's advice to defendant as to his constitutional right to counsel continued to be inadequate, for the reason stated above, it is nevertheless clear from the record that (1) defendant's trial counsel was well aware of the *Dorado* exclusionary rule and that (2) he chose to make no objection to the introduction of Cheetham's testimony as to the statements made by defendant at the interviews which followed the search.

The instant case was tried in June 1965. *People* v. *Dorado, supra,* 62 Cal.2d 338, was decided on January 29, 1965. It was

preceded by the first *Dorado* opinion (*People* v. *Dorado* (Cal.) 40 Cal.Rptr. 264, 394 P.2d 592) and the decision in *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758].

We agree with the following statement in *People* v. *Valdez,* 239 Cal.App.2d 459, 465 [48 Cal.Rptr. 840] : "Before this case was tried [October 1964] the *Escobedo* rule, and the California Supreme Court's interpretation of it in the first *Dorado* opinion, had become the subject of widespread comment, both within the profession and among the general public." It was held that the failure to raise the *Dorado* issue at trial precluded its being raised on appeal.

On March 22, 1966, our Supreme Court denied a hearing in *People* v. *Woods,* 239 Cal.App.2d 697 [49 Cal.Rptr. 266], wherein this court (Second District) pointed out that "The trial in this case was held on December 10, 1964, several months after *Escobedo* . . . and after the first decision in *People* v. *Dorado.* . . ." It concluded that "the failure to raise the issue at the trial [i.e., lack of forewarning of constitutional rights] precludes defendant from raising it here." (Pp. 704-705.)

In accord: *People* v. *Palmer,* 236 Cal.App.2d 645, 650 [46 Cal.Rptr. 449] ; *People* v. *Sanchez,* 239 Cal.App.2d 51, 55 [48 Cal.Rptr. 424] ; *People* v. *Almond,* 239 Cal.App.2d 46, 50 [48 Cal.Rptr. 308].

■ We hold that, by reason of the failure of his counsel to raise the above-discussed issue at the trial level, defendant is now precluded from raising it on appeal.

Among the items removed by the police from defendant's garage was a large cash register manufactured by NCR, the identification number on which had been filed off. The file marks were fresh.

Cheetham testified that defendant told him that he had bought the machine from one Klanecky, former owner of "Foster's Freeze," in San Rafael. Klanecky testified that he knew nothing about the machine and that defendant's statement was untrue.

Defendant made no objection to the introduction of the above testimony and, even though the prosecution introduced no evidence as to how or from whom defendant had acquired the cash register, defendant never moved to strike said testimony.

Before resting his case in chief, the prosecutor offered the register in evidence. Defendant's objection, that it was "incompetent, irrelevant and immaterial, and not in any way

connected with any of the issues here before the Court whatsoever,'' was sustained.

After this matter was further discussed by court and counsel during the ensuing jury recess, the jury was returned to the courtroom and instructed by the court as follows:

''I now instruct you that whatever testimony has been given with respect to the cash register you are to consider only and solely with respect to the third count, which charges Mr. Larke with receiving property which had been stolen, knowing the same to be so stolen, and did conceal, withhold and aid in concealing and withholding such property from the owners thereof. . . . Anything about the cash register is not to be considered in any way, shape or form with respect to grand theft [first count] or burglary [second count], but solely for such bearing, if any, such relation or bearing, if any, it may have with respect to the third count.''

The prosecutor then asked the court if ''the register is admitted in evidence solely for that purpose,'' and the court answered that it was not. The prosecution then rested.

Defendant made no objection to the above-quoted statement of the court and he is now precluded from raising the point on appeal. (*People* v. *Collins,* 220 Cal.App.2d 563, 576 [33 Cal.Rptr. 638] ; *People* v. *Dunaway,* 222 Cal.App.2d 322, 329 [35 Cal.Rptr. 154].)

It is apparent that the trial court was fearful that, if the register itself was admitted in evidence, the jury might consider that it was part of the property stolen from NCR, as charged in the first count, or part of the property taken in the burglary charged in the second count.

However, since the testimony of Klanecky and Cheetham as to the register was admitted without objection and was part of the evidence in the case, it was proper for the jury to consider such evidence ''for such bearing, if any,'' as it might have on whether defendant knew that many of the items in his possession were in fact stolen property.

As defendant admits, ''Circumstantially, it [said testimony] indicated that the Defendant had given false and evasive answers to the police, and therefore had knowledge that the goods were, in fact, stolen.''

We need not discuss other instances wherein defendant gave false or evasive answers to questions asked of him by Inspector Cheetham. Defendant makes no contention that the evidence is insufficient to sustain the conviction *unless* we hold that the testimony to which he now objects was improperly admitted.

Nor is the applicable law in dispute. We quote from defendant's brief on appeal: "Pursuant to that Statute [Pen. Code, § 496], a conviction will lie where it is established that the goods were stolen and that the defendant had actual or constructive possession thereof, together with, and this point is crucial, the knowledge that the goods were, in fact, stolen. . . . However, the inherent difficulty in the factual finding that a defendant has knowledge that goods were stolen has lead [*sic*] the courts of this state to hold that circumstantial evidence will support a conviction under this Statute. It has been the theory of the courts that owing to the conditions which surround the receipt of stolen property and the knowledge requirement, if the State is to have a conviction at all, the use of circumstantial evidence is mandatory. The rule of law has been set in the case of the *People* v. *Juehling* (1935) 10 Cal.App.2d 527, 531 [52 P.2d 520], that evasive and contradictory statements are sufficient to support the conviction of a person indicted for the crime of receiving stolen property."

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied December 21, 1966, and appellant's petition for a hearing by the Supreme Court was denied January 18, 1967. Peters, J., was of the opinion that the petition should be granted.