[Crim. No. 4634. Third Dist. Apr. 25, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST ALLEN BARTON, Defendant and Appellant.

Donald Fillman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant had been a passenger in an automobile which struck another car. A state highway patrolman found him seated in the vehicle, exhibiting signs of intoxication. After administering roadside sobriety tests, the officer placed him under arrest[1] and took him to a public emergency hospital with a view toward additional intoxication tests, including a blood alcohol analysis. In the hospital a struggle broke out between defendant and several highway patrol officers. As a consequence of the affray, defendant was charged with assault upon a peace officer (in violation of Penal Code, section 241) and a jury found him guilty. He appeals from the order granting probation.

The prosecution proposed and the trial court gave the following jury instruction: "You are instructed that on the date alleged in the information, the defendant did not have a constitutional right to refuse a test designed to produce physical evidence in the form of a blood sample." This instruction is the sole error assigned on appeal.

The evidence was in sharp conflict. According to the prosecution witnesses Davis, the arresting officer, told defendant that a physician would examine him and would draw a blood sample for an alcohol test if defendant consented. After a loud refusal by defendant, Davis explained that it was not the

---

[1] The officer testified that he had arrested defendant "for being drunk in or about a vehicle and public view, 647F." Apparently the specific charges were violation of Penal Code, section 647, subdivision (f), and of the Sacramento County ordinance prohibiting intoxication on a public street (whether or not within an automobile).

policy of the Highway Patrol to take blood against the subject's wishes and that no force would be used to withdraw blood. A doctor entered the room and began filling out a questionnaire. Defendant would not cooperate with Davis' requests to be seated and Davis put his hands on him in order to have him sit down. Defendant told Davis that he could whip him and struck Davis on the side of the face. The two men then began to wrestle. Another officer arrived and forced defendant to release the choke hold he had on Davis. Defendant was then handcuffed and seated on the chair. With his hands manacled behind his back, defendant arose and lunged at Davis; another officer caught him before he could get to Davis. The officer forced him back into the chair and tied his feet together with his shoe laces. No blood sample was taken. Davis' version of the affair was corroborated by another officer and by the doctor.

Defendant testified that at the emergency hospital Davis told him they were going to draw blood; that defendant attempted to tell him he would black out if a needle were injected, but the officer would not listen. Defendant sat down. When the doctor entered defendant arose to speak with him. Davis forcibly pushed defendant into the chair, causing him to strike his back on the chair and head on the wall. Defendant arose a second time, still planning to talk to the doctor, but Davis moved on him, grasped him around the waist and swung him around. They fell to the floor, defendant's arms around Davis' waist. Two other officers took defendant's arms and he released his hold. Defendant described subsequent mistreatment by the officers and the physician. His wife testified to his tendency to "black out" from needle injections.

The principle which excludes illegally obtained evidence in criminal trials[2] has resulted in the crystallization of constitutional rules governing admissibility of physiological intoxication tests performed upon arrested persons and, correlatively, of evidence of refusal to accept testing. ■ The withdrawal of a blood sample in a medically approved manner, although without the subject's consent, does not deprive him of his Fifth Amendment privilege against self-incrimination;[3]

---

[2]*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *Ker* v. *California* (1963) 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623]; *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].

[3]*Schmerber* v. *California* (1966) 384 U.S. 757, 759-761 [16 L.Ed.2d 908, 913-914, 86 S.Ct. 1826]; *People* v. *Duroncelay* (1957) 48 Cal.2d 766, 770 [312 P.2d 690]; 8 Wigmore on Evidence (3d ed.) § 2265, note 6.

when conducted under nonbrutal circumstances, does not violate. the Fourteenth Amendment's guarantee of due process of law;[4] constitutes a search of the person but, when incident to, a lawful arrest and performed in a reasonable manner, does not violate the Fourth Amendment's proscription against unreasonable searches.[5] Relative to a comparable test (the breath sample to be tested for alcoholic content) it is said that suspects "have no constitutional right to refuse a test. . . ."[6]

The challenged instruction possessed several vices. As a generalization, the assumed absence of a constitutional right to refuse blood withdrawal is constitutionally suspect. In all the cases cited, *supra* (fns. 3, 4 and 5), the taking was without the suspect's consent. None, however, involved a forcible withdrawal against his physical resistance. The majority opinion in *Schmerber* v. *California, supra,* 384 U.S. at page 772 [16 L.Ed.2d at p. 920], emphasizes that lawfulness of the intrusion rests "on the facts of the present record" and does not necessarily permit "intrusion under other conditions." At another point the *Schmerber* opinion states (384 U.S. at p. 760, note 4 [16 L.Ed.2d at p. 913]) : "It would be a different case if the police initiated the violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force." It is apparent that under some circumstances enforced blood withdrawal would evoke the exclusionary rule. The instruction's blanket rejection of a right of refusal resulted in an incorrect statement of law.

Whatever its constitutional accuracy, the challenged instruction had no place in the trial unless it bore upon the issues before the jury. It is error to charge the jury on abstract principles of law not pertinent to the case.[7]

---

[4]*Schmerber* v. *California, supra,* 384 U.S. at pp. 760-765 [16 L.Ed.2d at pp. 913-916]; *Breithaupt* v. *Abram* (1957) 352 U.S. 432, 435-440 [1 L.Ed.2d 448, 450-453, 77 S.Ct. 408]; *People* v. *Duroncelay, supra,* 48 Cal.2d at p. 770.

[5]*Schmerber* v. *California, supra,* 384 U.S. at pp. 767-772 [16 L.Ed.2d at pp. 917-920]; *People* v. *Duroncelay, supra,* 48 Cal.2d at pp. 771-772; *McDonald* v. *Justice Court* (1967) 249 Cal.App.2d 960, 963-964 [58 Cal. Rptr. 29]; see Note 14 U.C.L.A. L.Rev. 680-692; Annots. 87 A.L.R.2d 370; 16 L.Ed.2d 1332.

[6]*People* v. *Sudduth* (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401], cert. den. 389 U.S. 850 [19 L.Ed.2d 119, 88 S.Ct. 43].

[7]*People* v. *Jackson* (1954) 42 Cal.2d 540, 546 [268 P.2d 6]; see Pen. Code, § 1093, subd. 6, § 1127.

The instruction picked up a rule of evidentiary admissibility demarcating an area of constitutional immunity and applied it to the ultimate issue of assault. It erroneously equated a constitutional immunity, or the lack of it, with existence or nonexistence of a "right" of refusal to the point of physical resistance. If constitutional quarrels are to be fought out in courtrooms instead of the streets, judicial sanctions rather than physical self-help must supply redress. Exclusionary rules of evidence as well as civil remedies supply judicial sanctions against unconstitutional interferences. They do not mark out the areas in which physical resistance to public authority is constitutionally prohibited or permitted.[8]

The issue before the jury was whether defendant had initiated the violence against the officers, as they testified, or had only refused submission to physical force, as he testified. That issue turned on the jury's estimate of credibility. Either the jurors believed the prosecution witnesses past the point of reasonable doubt; or they gave defendant enough credence to harbor a reasonable doubt. A rule devised for admission or exclusion of blood sampling evidence was irrelevant to the jury's estimate of credibility. Having no bearing on the judgment of credibility, the instruction was an abstraction only, not pertinent to the issue before the jury.[9]

The error was prejudicial. The defense was built entirely on defendant's testimony that the officers had resorted to force, while he had restricted himself to passive resistance. If the jury gave his testimony enough credence to hold the prosecution's case in reasonable doubt, he would be acquitted. The instruction virtually told the jury that his claim of passive

[8]Several statutes illustrate the lack of connection between constitutional rights, as expressed in exclusionary rules, and a duty of physical submission. The "implied consent" law enacted in 1967 and inapplicable here, conditions vehicle driving privileges upon consent to chemical tests for alcohol influence, permitting the driver a choice of blood, breath or urine testing. (Veh. Code, §§ 13353, 13354; see 14 U.C.L.A. L.Rev. at pp. 690-691.) Another illustration appears in the law of arrest. Evidence produced by an unconstitutional arrest by police is inadmissible (e.g., *People* v. *Stoner* (1967) 65 Cal.2d 595, 598 [55 Cal.Rptr. 897, 422 P.2d 585]). Despite impropriety of the arrest, the arrestee is under a duty to refrain from forcible resistance. (Pen. Code, § 834a; *In re Bacon* (1966) 240 Cal.App.2d 34, 52-53 [49 Cal.Rptr. 322].)

[9]It should not be inferred that an instruction on the legal quality of resistance to officers is always inappropriate. Where, for example, a prosecution for resisting arrest is met with a defense of the arrest's illegality, an instruction giving the substance of Penal Code, section 834a might be appropriate.

resistance was devoid of constitutional right, depriving it of recognition in law whatever its credibility in fact.

Judgment reversed.

Pierce, P. J., and Regan, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 19, 1968. Burke, J., was of the opinion that the petition should be granted.