[Crim. No. 4781.   Third Dist.   Oct. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ISAAC B. RODRIGUEZ, Defendant and Appellant.

William Gregory, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Michael H. Fabian, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Defendant appeals from conviction after jury verdict of violation of section 211 of the Penal Code (attempted robbery).[1]

## Questions Presented

1. Effect of evidence of identification at lineup without the presence of an attorney.

2. Alleged error in giving "flight after crime" instruction.

## Evidence

On August 31, 1967, at approximately 4 a.m., Mrs. Juanita Harrison, accompanied by her 12-year-old daughter and her 13-year-old nephew, was delivering papers for the Sacramento Union. She was driving on 15th Street in Sacramento, intending to turn into an alley between O and P Streets. Fifteenth Street is a one-way street and Mrs. Harrison was in the middle lane. In order to turn into the alley, she had to move to the right-hand lane. When she increased her speed to pass a car in that lane, the car also increased its speed. She then slowed down. The car did likewise. Finally she passed the car and turned into the alley.

During the time she was next to the other car she was able to get a good look at its driver. She noted that his face

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]An information charging defendant with violation of section 487 of the Penal Code (armed robbery) from the person of a Mrs. Ramsey was consolidated for trial with the above-mentioned charge. The jury could not agree and a mistrial was ordered as to the section 487 offense.

appeared long and narrow and he had a goatee. She and the two children proceeded to deliver papers. She then stopped the car in an alley, to allow the children to deliver papers to an apartment house. While still inside the car the children noticed the car which had been annoying them and noticed that the driver was getting out. She told them to ignore this. After the children left the car the man whom she identified as defendant walked past the front of her car and on around the corner. He soon came back, stepped to the driver's side of her car, put his hand which held a screwdriver in the open window and said, ''Don't scream lady. Give me all your money.'' She responded, ''I don't have any money.'' He repeated, ''Don't scream, lady'' and then, walking fast, disappeared. She noticed that he had a goatee and mustache, was about 5 feet 10 inches tall, had dark hair, a high forehead, and was wearing a light-colored shirt or jacket and weighed about 185 pounds. His car was an old Plymouth or Ford either just pre- or post-World War II, brown in color, with yellow primer over shots, and which appeared to have been dents which had been straightened.

At 5 a.m. that morning she reported the incident to Police Officer Vaccaro, giving him the above-mentioned description. At 6 a.m. the officer noticed a 1948 Plymouth matching the car description given by Mrs. Harrison. The car was parked between 1900 and 1907 7th Street and was registered to defendant. The hood was warm.

The officer learned from residents in the area where the car was parked that defendant lived in the basement at 1900 7th Street. Vaccaro called his supervisor for instructions and, while waiting for him to answer, observed Hector Barrera emerge from the basement door. Barrera informed him that neither defendant nor anyone else was then in the basement. Shortly thereafter a Mexican with dark, bushy hair and a beard stuck his head out of the basement door and then closed the door. As soon as the supervisor arrived, the two officers entered the basement. They found no one there. They found open a window which had earlier been closed.

On September 5 Mrs. Harrison was shown several photographs, one of which was of defendant. She was unable to identify him as the culprit. At the trial she testified that two or three of the pictures looked like him, but as none of the subjects had beards she could not positively identify defendant. At the trial she positively identified a picture taken of defendant at the time of his arrest, stating that his goatee and

mustache were not then as heavy as when she had seen him some ten days earlier on August 31.

On September 9 Mrs. Agnes Ramsey was robbed of her purse near 12th and J Streets by a man who threatened her with a screwdriver. A witness to the robbery observed the robber drive away in a car identical with defendant's car. (The charge based on this information was the one upon which the jury could not arrive at a verdict.)

On September 10 Officer Vaccaro observed defendant driving his car and arrested him as he stepped from the car. He had a goatee at that time but it was a lesser one than Vaccaro had previously seen. Defendant was taken to the police station and a lineup was held. Mrs. Harrison immediately picked defendant as the man who attempted to rob her.

Mrs. Ramsey had been grabbed from behind by her assailant and saw him only a "little bit from the side" and was not able to identify defendant. At the lineup a Mrs. Hancock, who had witnessed the Ramsey robbery, was not able to positively identify defendant as the robber. At the trial, however, Mrs. Hancock did so identify defendant.

Defendant testified that on August 31 he was 5 feet 5 inches tall and weighed 145 pounds.[2] Defendant stated that on that day he was with three certain persons from the night before until late the next morning after the Harrison episode and that he was not the person involved in it. He was impeached by admitting his 1963 conviction for first degree robbery. The three persons testified for the defense giving factually the same story that defendant did.

### 1. *No attorney at the lineup.*

Defendant, relying upon *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], contends that as he was not represented by an attorney at the lineup the court committed reversible error in allowing Mrs. Harrison to testify that she identified defendant in the lineup. As the lineup in the instant case took place after the dates of those cases, it would be subject to their proscriptions. (See *People* v. *Feggans* (1967) 67 Cal.2d 444, 448 [62 Cal. Rptr. 419, 432 P.2d 21].) ■ However, defendant at no time at the trial objected to the evidence of the lineup. Although the application of the rule that failure to object to the

---

[2]At the trial Mrs. Harrison's opinion as to defendant's weight had not changed.

admission of evidence which might otherwise be inadmissible cannot be raised for the first time on appeal has not yet arisen in any reported case concerning a lineup without the presence of a suspect's attorney, we see no reason why we should not apply the rule here. The rule has been applied to the failure to object to the admission of evidence obtained by an unlawful search and seizure (*People* v. *Robinson* (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Dutch* (1967) 254 Cal.App.2d 163, 164 [61 Cal.Rptr. 727]; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 462-463 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Ross* (1967) 67 Cal.2d 64, 71 [60 Cal. Rptr. 254, 429 P.2d 606]), also to the failure to object to the admission of a written statement obtained in violation of the rule of *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] (*People* v. *Madison* (1966) 242 Cal.App.2d 820, 824 [51 Cal.Rptr. 851]). (See the list of authorities in *People* v. *Larke* (1966) 246 Cal.App.2d 571, 575 [54 Cal.Rptr. 834], holding that the failure to raise at the trial the issue of the lack of forewarning of constitutional rights precludes the raising of the issue on appeal.)

In *People* v. *Lozano* (1967) 250 Cal.App.2d 58, 60 [58 Cal. Rptr. 102], it was held that the defendant's failure to object to the admission of evidence obtained in violation of *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], eliminated any necessity of considering the matter on appeal. An appellant may not for the first time on appeal raise the issue of exclusion of evidence seized in an unannounced forced entry of premises by police officers in violation of section 1531 of the Penal Code. (*People* v. *De Leon* (1968) 260 Cal.App.2d 143, 149-150 [67 Cal. Rptr. 45].)

█ Defendant's failure to object to the lineup evidence made it unnecessary to introduce evidence, if it existed, that defendant was represented by an attorney at the lineup, or waived such representation. Moreover, had objection been made, the evidence would have been excluded. In view of defendant's failure to object to the lineup evidence, we deem it unnecessary to consider the Attorney General's contention that if its admission were error, it is error without prejudice.

## 2. "*Flight after crime*" *instruction.*

█ The court instructed: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to

establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt, and the significance to be attached to such a circumstance, are matters for your determination.''

Defendant contends that this instruction was erroneous because there was no evidence of an accusation of the robbery which was followed by flight, and that although the evidence shows that defendant removed himself from the basement and fled when he saw the officer talking to Berrera, this was not done in the face of an accusation or even information that an attempted robbery had been committed. Defendant urges that the giving of this instruction comes within the rule ''It is error to charge the jury on abstract principles of law not pertinent to the case.'' (*People* v. *Barton* (1968) 261 Cal. App.2d 561, 564 [68 Cal.Rptr. 157].)

This instruction is a modified version of section 1127c of the Penal Code containing that section's essential elements. In *People* v. *Hill* (1967) 67 Cal.2d 105 [60 Cal.Rptr. 234, 429 P.2d 486], a similar instruction was approved. The court there pointed out: ''The Legislature's purpose in enacting 1127c was to abolish the rule stated in many early cases that the jury could not be instructed to consider flight as evidence of guilt unless it had been proved that the fleeing suspect had previously learned that he was accused of commission of a particular crime.'' (Pp. 120-121.) This ruling negatives defendant's contention. In many instances a person having committed a crime flees before he learns that he is suspect. As said in *People* v. *Moore* (1963) 211 Cal.App.2d 585, 600 [27 Cal.Rptr. 526], concerning the flight there, ''Whether such departure constituted intentional flight was for the determination of the trial judge.'' (See *People* v. *Bennett* (1953) 122 Cal.App.2d 244, 252 [264 P.2d 664]; *People* v. *Rokes* (1937) 18 Cal.App.2d 689, 693 [64 P.2d 746].) In the case at bench it was for the determination of the jury.

Judgment affirmed.

Friedman, Acting P. J., and Regan, J., concurred.