Filed 3/9/21  P. v. Carr CA2/5
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVON CARR,<br><br>    Defendant and Appellant. | B301824<br><br>(Los Angeles County<br>Super. Ct. No. BA464580) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed.

Julie Caleca, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

Davon Carr was charged with three separate shootings. A jury convicted him of shooting at an occupied motor vehicle, and acquitted him of the other charges. On appeal, his principal argument is that the joinder of the three counts violated his right to a fair trial. He also complains that the trial court improperly imposed statutory fines and assessments. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**1.      The Freeway Shooting**

On December 2, 2016, at about 6:00 p.m., Javier Carrillo was driving his pickup truck on Pacific Coast Highway. His 13-year-old son was in the front passenger seat. Appellant was driving a silver BMW down the center divider next to Carrillo's lane of traffic when he collided with Carrillo's truck. Carrillo kept driving until appellant cut him off, forcing Carrillo to stop.

Appellant exited the BMW, cursing at Carrillo and grabbing his waistband. Carrillo drove away, and appellant followed him in the BMW. When Carrillo merged on to the freeway, he heard gunshots. One shot hit his bumper, another the taillight, and a third the truck's differential. Carrillo looked back and could see a gun being held out of the driver's side of the BMW. Carrillo reached over to grab his son and told him to get down. A bullet then entered through the middle of his rear windshield, shattering it, and exited out of the front windshield.

Carrillo slammed on his brakes and appellant attempted to pass him on the right-hand shoulder lane. Appellant's car hit the corner of Carrillo's truck, causing the truck to spin out. When Carrillo regained control of his truck, he saw appellant exiting the freeway. Carrillo sped up and rear-ended the BMW to disable it. Appellant and a passenger exited the car and fled on foot before the car caught fire.

2

Carrillo and his son exited their truck and called 911. The police arrived and found a handgun in the grass near the driver's side door of the BMW. The handgun's magazine was designed for ten bullets; six bullets were left in the chamber and magazine. While the police were investigating, appellant's mother arrived at the crime scene and told the police an "unknown friend" had told her appellant had been involved in an accident. Appellant's mother was the registered owner of the BMW. A few days later, Carrillo went to the police station and identified appellant's photo from a photographic array.

## 2. The Informant

In February 2017, detective Francis Hardiman was investigating an unrelated murder, when he spoke with a suspect, D.E., as part of the investigation. D.E. was a gang member and knew appellant. Detective Hardiman asked D.E. if he could provide information about certain other shootings. D.E. said he knew of three shootings appellant had committed: the Carrillo shooting, and two others. D.E. agreed to be a witness against appellant in exchange for a reduced sentence. He was facing over 14 years in state prison for firearm charges, but negotiated a plea under which he received a 365-day county jail sentence and three years of probation.

## 3. The Charges

Appellant was charged in a single information with the three shootings D.E. had reported. The information alleged one count of shooting at an occupied motor vehicle (Pen. Code, § 246; count 1),[1] one count of willful, deliberate, and premeditated

---

[1] All further undesignated statutory references are to the Penal Code.

attempted murder (§§ 664/187, subd. (a); count 2), and another count of shooting at an occupied motor vehicle (§ 246; count 3). Gang and firearm enhancements were alleged as to all counts (§ 186.22, subds. (b)(1)(C), (b)(4); 12022.53, subds. (b)–(d)). Appellant pled not guilty.

## 4.    Evidence at Trial

### a.    The Carrillo Shooting

Carrillo testified at trial that appellant shot at him about four times on the highway.  The parties stipulated that appellant's mother showed up at the crime scene and told the police an "unknown friend" informed her that appellant had been involved in an accident in her car.  Officers testified that a handgun was recovered next to the BMW's driver's side door and that four bullets were missing from the gun's chamber.  D.E. testified that appellant told him he had been in a car accident on Pacific Coast Highway.  D.E. also testified that appellant told him that he had shot at some people during the incident.  Appellant asked him to go to the accident scene and recover his car.

### b.    The Miller Shooting

A police officer testified that, on October 24, 2016, Victor Miller was shot several times on the street.  Miller then drove to a gas station where help was summoned.  The police recovered 13 nine-millimeter shell casings from the crime scene.  D.E. testified that, in October 2016, appellant told him that he had shot Miller. Miller and appellant were members of the Rollin' 40's gang, and appellant shot him because Miller had been stealing from him.

### c.    The Bingham Shooting

A police officer testified that, on June 16, 2016, Resan Bingham was shot while driving, and crashed his car into a light

4

pole. The police recovered three .40-caliber shell casings and one .40-caliber round from the crime scene. He was taken to the hospital and survived, but refused to talk to the police. D.E. testified that appellant admitted he had shot Bingham. Bingham was a fellow member of the Rollin' 40's gang and had threatened to kill appellant. Appellant drove to Bingham's house and shot Bingham in his car using a .40-caliber semiautomatic pistol.

**5.      The Verdict**

The jury found appellant guilty of shooting at Carrillo's truck, but acquitted him of the Miller and Bingham shootings. The jury also found the firearm allegation true, but the gang allegation not true. The trial court sentenced appellant to the high term of seven years to run concurrent with a term he was currently serving for first degree burglary.[2] He timely appealed.

*DISCUSSION*

**1.      The Preference for Joinder**

Penal Code section 954 governs joinder and provides in part: "An accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts . . . provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately . . . ." "The law prefers trying charged offenses together because doing so

---

[2]      The People did not ask for a sentence based on the firearm enhancement because "[g]iven that the jury found the Gang Allegation pursuant to Penal Code section 186.22(b)(1)(c) to be not true, the Gun Allegations pursuant to Penal Code section 12022.53(c) and (b) do not apply per statute."

5

ordinarily promotes efficiency." (*People v. Anderson* (2018) 5 Cal.5th 372, 388.)

Even if joinder is proper, the trial court has discretion to order the counts tried separately. (*Anderson*, *supra*, 5 Cal.5th at p. 388.) When " 'the statutory requirements for joinder are met, a defendant must make a clear showing of prejudice to establish that the trial court abused its discretion in denying the defendant's severance motion.' [Citation.] 'In determining whether a trial court's refusal to sever charges amounts to an abuse of discretion, we consider four factors: (1) whether evidence of the crimes to be jointly tried is cross-admissible; (2) whether some charges are unusually likely to inflame the jury against the defendant; (3) whether a weak case has been joined with a stronger case so that the spillover effect of aggregate evidence might alter the outcome of some or all of the charges; and (4) whether any charge carries the death penalty or the joinder of charges converts the matter into a capital case.' " (*Id.* at pp. 388–389.)

**2.        Joinder Did Not Result in Gross Unfairness**

Appellant argues the trial court erred in allowing the joinder of the Carrillo shooting with the Miller and Bingham shootings. He acknowledges that he did not object to the joinder in the trial court, but contends he is still entitled to reversal because the joinder resulted in gross unfairness, depriving him of his constitutional right to a fair trial.

The trial court has " 'no statutory duty to order severance on its own motion,' " and appellant forfeited any claim that the trial court abused its discretion in permitting joinder. (*People v. Romero and Self* (2015) 62 Cal.4th 1, 29.) However, even when the trial court was correct at the time it permitted the

6

consolidation of charges, "we must further inquire whether events *after* the court's ruling demonstrate that joinder actually resulted in 'gross unfairness' amounting to a denial of defendant's constitutional right to fair trial or due process of law. [Citations.]" (*People v. Merriman* (2014) 60 Cal.4th 1, 46.)

"In resolving a claim that joinder resulted in gross unfairness in violation of a defendant's right to a fair trial and due process, we have observed that a judgment will be reversed on this ground only if it is 'reasonably probable that the jury was influenced [by the joinder] in its verdict of guilt.' [Citation.]" (*Merriman, supra*, 60 Cal.4th at p. 49; *People v. Grant* (2003) 113 Cal.App.4th 579, 588.) As our Supreme Court decided in *Rogers*, we need not reach the issue of "whether review for gross unfairness is available in the absence of a motion to sever or an objection to joinder, for even if such review is available, gross unfairness did not result in the present case." (*People v. Rogers* (2006) 39 Cal.4th 826, 851; cf. *People v. Simms* (1970) 10 Cal.App.3d 299, 308–309 [the court reached the merits of a claim that joinder had rendered a trial fundamentally unfair, even though there was no motion to sever in the trial court].)

Appellant argues the joinder prejudiced him, influencing the jury in its verdict of guilt, because the evidence of the Miller and Bingham shootings would not have been admissible in severed trials, was inflammatory, and strengthened the Carrillo case. Even where evidence of separate crimes was not cross-admissible, there is no due process violation where evidence of the defendant's guilt was "relatively straightforward and distinct" and "independently ample." (*People v. Soper* (2004) 45 Cal.4th 759, 784.) That is certainly the case here: Carrillo testified that appellant shot at him, and had subsequently

7

identified appellant, a stranger, in a photographic array. Carrillo's testimony that four shots were fired was corroborated by the examination of the handgun, missing four bullets, found by the driver's side door of the car appellant was driving. Appellant's car was registered to his mother, and his mother arrived at the crime scene and told officers her son had been involved in the accident. Finally, D.E. independently identified appellant as the shooter based on appellant's admissions to him.[3]

We also observe that all three shootings were inflammatory: they all involved shootings that could have killed the targeted victims. (See *People v. Elliott* (2012) 53 Cal.4th 535, 553 ["To discharge his burden of showing prejudice from the joinder of the charges arising from the two incidents, defendant must show that one of the charged offenses was substantially more inflammatory than the other . . . ."].) While the prosecution

_____

[3] We reject appellant's argument that "the evidence supporting each case was objectively weak, such that it is likely that the combination of the evidence against appellant could have reasonably resulted in the guilty verdict on count one." The evidence of the Miller and Bingham shootings may have been weak—no percipient witnesses testified, the prosecution relied almost exclusively on an informant's testimony about what appellant had told him—but evidence of the Carrillo shooting was strong: eyewitness identification, motive, appellant's mother confirmed appellant was driving her car, the gun found near the car appellant was driving had four empty chambers, and Carrillo testified four shots were fired. If the jury had convicted appellant of the Miller and Bingham shootings and acquitted him on the Carrillo incident, then appellant's argument might have some weight. Instead the jury concluded that the evidence of two of the three shootings was just too weak and acquitted. Not so for the Carrillo shooting, the one count that was exceptionally strong.

argued that appellant shot his fellow gang members Bingham and Miller after a perceived slight, the Carrillo shooting was more likely to alarm the jury as it involved appellant shooting at a total stranger and his child after a fender-bender on a public street.

The trial court instructed the jury to consider the charges separately.[4] Even if the prosecution's closing arguments occasionally " 'encouraged the jury to aggregate the evidence,' " (*Gomez, supra*, 6 Cal.5th at p. 277), the jury demonstrably followed the court's instruction and not the prosecution's argument, as evidenced by the mixed verdict. Appellant has not demonstrated a reasonable probability that he would have obtained a more favorable result if counts 2 and 3 had not been joined with count 1. The jury's mixed verdict shows it " 'was capable of and did differentiate among' " the charges. (*People v. Gomez* (2018) 6 Cal.5th 243, 277.)

Appellant's claim for ineffective assistance fails for the same reason: even if no rational tactical reason supported not moving to sever the counts, there was no prejudice for the reasons we have already given. (See *People v. Maury* (2003) 30 Cal.4th 342, 393–394 [defendant failed to establish prejudice from counsel's omission where defendant did not establish prejudice from joinder of charges].)

3.    **The Imposition of a Fine and Assessments**

Appellant argues that the trial court violated his federal and state right to due process by imposing a $300 restitution fine

---

[4]    The court instructed the jury with CALCRIM No. 3515: "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one."

(§ 1202.4), a $30 court facilities assessment (Gov. Code, § 70373), and a $40 court operations assessment (§ 1465.8). Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, appellant argues the court violated his right to due process by imposing these amounts without first determining his ability to pay them.

Our Supreme Court has granted review to decide whether, as *Dueñas* holds, a court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.) Even if the Supreme Court concludes consideration of ability to pay is required, we would not reverse pursuant to *Dueñas* here. Any error by the trial court in failing to consider, sua sponte, defendant's ability to pay the fine and assessments totaling $370 is harmless in light of the long custodial sentence imposed. (*People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140.)[5]

---

[5] Because we conclude any *Dueñas* error was harmless, we need not address the Attorney General's argument that the issue has been forfeited by appellant's failure to object at trial.

### *DISPOSITION*

The judgment is affirmed.

                                            RUBIN, P. J.

WE CONCUR:

MOOR, J.

KIM, J.