[No. E030762. Fourth Dist., Div. Two. Nov. 20, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LAVELLE GRANT, Defendant and Appellant.

582

**COUNSEL**

Patricia Ihara, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson and, Gary W. Schons, Assistant Attorneys General, Peter Quon, Jr. and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KING, J.—

## INTRODUCTION

Defendant was charged in a second amended information with burglary (count 1) (Pen. Code, § 459),[1] receiving and concealing stolen property, computer equipment (count 2) (§ 496, subd. (a)), and unlawful possession of personal property, a video camera, with the serial number removed (count 3) (§ 537e, subd. (a)(2)). It was further alleged that defendant had two prison priors (§ 667.5, subd. (b)) and six prior strike convictions (§§ 667, subds. (c) & (e) & 1170.12, subd. (c)).

The district attorney originally filed counts 1 and 3 separately from count 2 and was later allowed to consolidate the counts. Before trial, defendant moved to sever each of the counts. He argued that the evidence was not cross-admissible on any of the counts, and joinder would be highly prejudicial. The trial court denied the motion.

At the close of the evidence, the trial court granted defendant's motion to dismiss count 3 under section 1118.1. A jury convicted defendant on counts 1 and 2. The trial court found the two prison priors and six prior strike convictions true.

At sentencing, the trial court struck the two prison priors, and sentenced defendant to 25 years to life on the burglary conviction (count 1). It reduced defendant's conviction on count 2 to a misdemeanor, and imposed a concurrent term of 180 days on count 2.

Defendant appeals. He contends the trial court erred in denying his motion to sever count 1 from counts 2 and 3, and the joinder denied him a fair trial. In support of this contention, he notes the evidence on the counts was not cross-admissible; the prosecutor erred in urging the jury to consider the evidence on counts 2 and 3 on count 1, and the evidence on count 3 on count 2; the trial court erred in refusing his request to instruct the jury not to consider the evidence on any count in relation to the other counts; and the given instructions did not ameliorate any of these errors.

We conclude that the trial court did not abuse its discretion in denying defendant's motion to sever. Nevertheless, the joinder substantially prejudiced defendant and denied him a fair trial. Our conclusion is based on the

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

non-cross-admissibility of the evidence on counts 1 and 2, the similarity of the evidence on counts 1 and 2, and the relative weakness of the evidence on count 1 in relation to count 2 in conjunction with prosecutorial and instructional errors. In combination, these factors had a substantial and injurious effect or influence on the jury's verdicts. Accordingly, the judgment must be reversed.

Defendant further contends the evidence was insufficient to support his conviction for receiving stolen property (count 2), and that this charge was barred by the three-year limitations period of section 801. Although we reverse defendant's conviction on count 2, we address the sufficiency of the evidence on this count, because the double jeopardy clause precludes retrial if the evidence is insufficient. (*U.S. v. Lewis* (9th Cir. 1986) 787 F.2d 1318, 1323.)

We conclude that the offense of receiving stolen property was time-barred. However, defendant was also charged in count 2 with *concealing* stolen property, a continuing offense which was not time-barred. The jury was instructed that concealing stolen property was a form of receiving stolen property. We conclude that substantial evidence supports the crime of concealing stolen property.

Lastly, defendant contends that his 25-year-to-life sentence constitutes cruel and unusual punishment. Because we reverse the judgment, we do not reach this contention.

## FACTS AND PROCEDURAL HISTORY

On May 1, 2001, at approximately 11:30 p.m., Barbara Chenier was standing in front of her house directly across the street from an elementary school. She saw two men get out of a dark-colored Honda parked on her side of the street, and walk toward the school grounds. One of the men went back to the car, opened the driver's side door, retrieved something, put it in his pants, and walked back across the street to the school. Ms. Chenier called 911. From inside her house, Ms. Chenier saw police officers standing next to the same car she described to the 911 dispatcher.

Ms. Chenier was not able to see the men's faces or determine their races. She believed they were both between the ages of 18 and 20.[2] She said the driver was wearing a short-sleeved, white or light-colored shirt. The driver was "sort of short" and the other man was of average height.[3] One of the men, possibly the driver, was "stocky."

---

[2] Defendant was 30 years old at the time of the burglary.

[3] Defendant is 5 feet 7 inches tall.

Deputy Jacqueline Horton and her partner arrived at approximately 11:45 p.m. They determined that no one was in the Honda, and checked its license plate number. They then drove into the school parking lot. As they did so, the dispatcher told them an audible alarm had gone off at the school.

The officers checked on several portable classroom buildings. A lock on one of the classroom doors was pried open, and the door was propped open with a chair. Outside the classroom, the officers found a computer monitor, a hard drive, and a keyboard. Inside the classroom, tables were moved away from a wall and computers on the tables were unplugged. One computer was on the floor. The officers did not find anyone on the school grounds.

About 11:45 p.m., Officer Lung arrived and parked his marked police vehicle about 50 feet behind the Honda. A couple of minutes later, defendant came walking down the street on the side opposite the school, walked past Officer Lung's marked police vehicle, and headed toward the Honda. He was wearing a light-gray T-shirt and was perspiring. He was friendly and cooperative.

Officer Lung stopped defendant and asked what he was doing. He said he had just made a telephone call because his car, the Honda, had "broken down." Using defendant's car keys, Officer Lung started the Honda with no trouble. He searched the Honda and subjected defendant to a patdown search, but did not find anything. The Honda was registered to defendant's mother. Officer Horton arrested defendant and took him to the police station.

Meantime, Officer Lung and two other officers went to defendant's home where he lived with his parents. The parents gave the officers permission to search the home and garage. In the garage, the officers found old computer equipment manufactured in 1987, consisting of a hard drive, monitor, two keyboards and a mouse. The computer equipment was in the backseat of a car registered to defendant's mother. Defendant's mother said she hadn't used the car in about a year. In one of the bedrooms, the police found a video camera with its serial number sticker removed.

Officer Lung questioned defendant at the police station. Defendant said he had purchased the computer equipment in 1995 for $100. The computer equipment was stolen from Valley View High School during a burglary in February 1998. It had been donated to the school's ROTC program in 1993 or 1994.

Defendant said he purchased the video camera from a Crip in a park for $50. When asked whether the price of the video camera seemed low, defendant said, "Hell, yeah. It sounded low, but the dude offered it to me for

50 bucks. I wasn't going to turn that down." When asked whether he thought the video camera might be stolen, defendant said "he thought it might be stolen, but for 50 bucks he didn't care if it was stolen or not." Defendant also said he didn't know that the serial number on the video camera was missing.

## DISCUSSION

### A. *The Joinder of the Charges Denied Defendant a Fair Trial for Multiple Reasons*

Defendant contends the trial court abused its discretion in denying his motion to sever the counts, and joining the counts denied him due process and a fair trial. We disagree that the trial court abused its discretion in denying defendant's motion to sever. However, and for the reasons explained below, the joinder had a substantial and injurious effect or influence on the jury's verdicts, and denied defendant a fair trial.

#### 1. *The Motion to Sever Was Properly Denied*

Section 954 provides that "[a]n accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts . . . provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately . . . ." " 'Offenses are of the same class when they possess common attributes . . . .' " (*People v. Carson* (2003) 109 Cal.App.4th 978, 990 [135 Cal.Rptr.2d 727].)

In the present case, the statutory requirements for joinder were met, because the charged crimes were of the same class. Burglary (count 1), receiving or concealing stolen property (count 2), and possession of personal property with a removed serial number (count 3) are crimes against property.

"When, as here, the statutory requirements for joinder are met, a defendant must make a clear showing of prejudice to establish that the trial court abused its discretion in denying the defendant's severance motion." (*People v. Mendoza* (2000) 24 Cal.4th 130, 160 [99 Cal.Rptr.2d 485, 6 P.3d 150] (*Mendoza*).) " 'The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever . . . .' " (*People v. Kraft* (2000) 23 Cal.4th 978, 1030 [99 Cal.Rptr.2d 1, 5 P.3d 68].) "Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; [or] (3) a 'weak' case has been joined with a 'strong' case, or with

another 'weak' case, so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges . . . . [Citation.]" (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1120 [124 Cal.Rptr.2d 373, 52 P.3d 572].)

Section 954.1 "prohibits the courts from refusing joinder strictly on the basis of lack of cross-admissibility of evidence." (*Belton v. Superior Court* (1993) 19 Cal.App.4th 1279, 1285 [24 Cal.Rptr.2d 34].) "Although cross-admissibility ordinarily dispels any inference of prejudice [citation], the absence of cross-admissibility does not by itself demonstrate prejudice. [Citation.]" (*Mendoza, supra,* 24 Cal.4th at p. 161.) To establish prejudice, "defendant must show more than the absence of cross-admissibility of evidence." (*People v. Mayfield* (1997) 14 Cal.4th 668, 721 [60 Cal.Rptr.2d 1, 928 P.2d 485].) In determining whether a trial court abused its discretion in denying a motion to sever, we examine the record before the trial court at the time of its ruling. (*Mendoza, supra,* at p. 161.)

In denying defendant's motion to sever, the trial court correctly observed that the crimes were of the same class. It further reasoned the counts "were all very different," and it was unclear whether the evidence on one count would be strong or weak in relation to the other counts. For these reasons, the trial court denied the motion.

In so ruling, the trial court did not abuse its discretion. Although the evidence on the counts was not cross-admissible, this factor in and of itself was insufficient to sever the counts for trial. Moreover, this is not a case where the relative or absolute strengths of the evidence on the joined counts could have been reasonably assessed before trial. Additionally, none of the counts was unusually inflammatory in relation to the others. Nevertheless, as we explain below, the joinder substantially prejudiced defendant's right to a fair trial.

### 2. *The Joinder Substantially Prejudiced the Jury's Verdicts*

Where, as here, the trial court's ruling on a motion to sever is correct at the time it was made, we must nevertheless reverse the judgment if the " 'defendant shows that joinder actually resulted in "gross unfairness" amounting to a denial of due process.' [Citation.]" (*Mendoza, supra,* 24 Cal.4th at p. 162.) "[E]rror involving misjoinder 'affects substantial rights' and requires reversal . . . [if it] results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.' " (*U.S. v. Lane* (1986) 474 U.S. 438, 449 [88 L.Ed.2d 814, 106 S.Ct. 725] (*Lane*); *Sandoval v. Calderon* (9th Cir. 2001) 241 F.3d 765, 771–772.)

The issue is not whether the evidence is sufficient to support the convictions on the joined counts, independent of the evidence on other counts.

" 'The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence.' " (*Lane, supra,* 474 U.S. at p. 449.)

■ In other words, the defendant must demonstrate a reasonable probability that the joinder affected the jury's verdicts. (*People v. Bean* (1988) 46 Cal.3d 919, 938–940 [251 Cal.Rptr. 467, 760 P.2d 996].) Here, defendant has met this burden on counts 1 and 2.

The present case is very similar to *Bean v. Calderon* (9th Cir. 1998) 163 F.3d 1073, 1084–1086 (*Bean*). There, the defendant was tried and convicted for the murders of Beth Schatz and Eileen Fox. The murders occurred three days apart and under similar yet distinct circumstances. The court reversed the defendant's conviction for the Fox murder, for several reasons. First, the evidence on the two murder charges was not cross-admissible, because there was insufficient evidence of a common modus operandi. Second, the prosecution repeatedly urged the jury to consider the two sets of charges in concert. Third, the court did not instruct the jury that it could not consider the evidence on one charge in determining the defendant's guilt on the other. Indeed, the trial court noted that the offenses evinced "considerable similarity." Fourth, the evidence that the defendant murdered Schatz was significantly stronger than the evidence that he murdered Fox.[4] Based on all these factors, the *Bean* court held that the defendant had been denied a fair trial. (*Ibid.*)

The same factors are present here. First, the evidence on counts 1 and 2 was not cross-admissible. Second, the prosecutor urged the jury to draw the impermissible inference that, because defendant possessed stolen computer equipment (count 2), he burgled the school for computer equipment (count 1). Third, the trial court refused defendant's request for an instruction on the non-cross-admissibility of the evidence on counts 1 and 2, and the trial court's other instructions did not ameliorate these errors. Fourth, the evidence on counts 1 and 2 was considerably similar, and the evidence on count 1 was not strong. It is therefore likely that the jury used the evidence that defendant received and was concealing computer equipment stolen from a school (count 2) to infer he burgled the school for computer equipment (count 1). We discuss each of these factors in further detail below.

---

[4] The *Bean* court upheld the defendant's conviction for murdering Schatz, because the evidence on this charge "was so strong that any due process violation in the joinder had no ' "substantial and injurious effect or influence in determining the jury's verdict" ' with regard to that offense. [Citations.]" (*Bean, supra,* 163 F.3d at p. 1086.)

### a. *The Evidence on Counts 1 and 2 Was Not Cross-Admissible*

" '[T]he first step in assessing whether a combined trial [would have been] prejudicial is to determine whether evidence on each of the joined charges would have been admissible, under Evidence Code section 1101, in separate trials . . . .' " (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315–1316 [65 Cal.Rptr.2d 145, 939 P.2d 259].) "Other crimes" evidence is inadmissible to establish a character or disposition to commit another crime, but is admissible to establish other facts, including identity, intent, motive, or common plan. (Evid. Code, § 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393, fn. 1 [27 Cal.Rptr.2d 646, 867 P.2d 757].)

Based on the facts before us, the only suggested basis for admitting the evidence on count 1 in relation to count 2, and vice versa, was to show a modus operandi, or common plan. "To be admissible to demonstrate a distinctive modus operandi, the evidence must disclose common marks or identifiers, that, considered singly or in combination, support a strong inference that the defendant committed both crimes. [Citations.]" (*People v. Bradford, supra,* 15 Cal.4th at p. 1316.) "In order to be relevant as a common design or plan, 'evidence of uncharged misconduct must demonstrate "not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." ' [Citation.]" (*People v. Catlin* (2001) 26 Cal.4th 81, 111 [109 Cal.Rptr.2d 31, 26 P.3d 357].)

The evidence on counts 1 and 2 involved computer equipment stolen from a school. On count 1, the evidence showed that late in the evening on May 1, 2001, a school room door was pried open, a computer was removed from the room, and other computers were unplugged. On count 2, the evidence showed that in February 1998, three years earlier, computer equipment was stolen from a school after school hours, and defendant admittedly possessed the stolen equipment. Entry was apparently obtained through an open window.

Although "considerably similar," the evidence on counts 1 and 2 did not share common marks sufficient to support a strong inference that defendant committed both crimes. Thus, as the trial court noted, the evidence on each count would have been inadmissible in a separate trial.

### b. *The Prosecutor Urged the Jury to Draw Impermissible Inferences in Closing Argument*

The prosecutor urged the jury to draw the impermissible inference that defendant committed the burglary (count 1) based on the evidence that he knowingly possessed stolen computer equipment (count 2). The prosecutor

argued: "Counsel in her opening statement said that you shouldn't and you can't use the fact that the defendant possessed, that there was stolen property, other computers that the defendant possessed in his house as evidence that he did the burglary at the [school]. That's wrong, ladies and gentlemen. *You can use this evidence of the stolen stuff at his house as circumstantial evidence that he did the burglary or that he was involved in the burglary.*" (Italics added.)

The prosecutor further argued: "The defendant is in possession of other stolen computers. They're at his house in a car in his house. He lies about how he obtained them. They were stolen from another school in Moreno Valley. I believe that you can use this to convict the defendant or is [*sic*] circumstantial evidence that may help you convict the defendant of the burglary at the school that night because this is strong circumstantial evidence that the defendant burglarized the school—did a burglary of the school for computers, the fact that he has other computers at his house."

The prosecutor continued: "Use your common sense. A school is broken into. Someone tries to steal computers. It's foiled, and they find other computers at the defendant's house that are stolen from another high school. Use your common sense to come to the reasonable conclusion, and that's the defendant is guilty of both."

The prosecutor also urged the jury to infer that defendant knowingly possessed the stolen computer equipment (count 2), based on the evidence that defendant didn't care whether the video camera was stolen (count 3). He argued: "Now, as you know, the issue of the [video] camera is not before you. You're not deciding whether or not the defendant possessed the camera. But you should use it for one purpose still. The defendant said—he was asked about the computer by Deputy Lung. He said, well, I didn't care, but it probably was stolen. I didn't care if it was stolen or not. For 50 bucks I'm not going to trip on it or something like that. A man that would do that, ladies and gentlemen, a man that doesn't care about where a camcorder comes from, think about it as far as does he possess the other stolen property that's found in the same house."

In urging the jury to draw these impermissible inferences, the prosecutor erred. " ' " '[A] prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include *reasonable inferences*, or deductions to be drawn therefrom. [Citations.]' " ' " (*People v. Hill* (1998) 17 Cal.4th 800, 819 [72 Cal.Rptr.2d 656, 952 P.2d 673], italics added.) " '[W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any

of the complained-of remarks in an objectionable fashion.' [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 960 [86 Cal.Rptr.2d 243, 978 P.2d 1171].)

It is reasonably probable that the jury applied the prosecutor's arguments in an objectionable fashion, in view of the similarity of the evidence on counts 1 and 2, the relative weakness of the evidence on count 1 in relation to count 2, and the trial court's instructional errors, discussed below.

    c. *The Trial Court Refused to Give a Limiting Instruction on Counts 1 and 2, and Its Other Instructions Did Not Ameliorate the Errors*

■    Generally, the trial court has no sua sponte duty to instruct the jury regarding the admissibility or use of other crimes evidence. (*People v. Falsetta* (1999) 21 Cal.4th 903, 924 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*), citing *People v. Collie* (1981) 30 Cal.3d 43, 63–64 [177 Cal.Rptr. 458, 634 P.2d 534].) But upon request, the trial court must give an instruction limiting the evidence to its proper scope. (Evid. Code, § 355; *Falsetta, supra,* at p. 924; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1316 [97 Cal.Rptr.2d 727].)

During the prosecutor's closing argument, defense counsel objected after the prosecutor urged the jury to consider the evidence on count 2 in determining defendant's guilt on count 1. The trial court responded in front of the jury, "I may give a cautionary instruction on that matter." Defense counsel also objected when the prosecutor urged the jury to consider the evidence on count 3 in relation to defendant's guilt on count 2.

After defense counsel's closing argument, the trial court invited defense counsel to draft a cautionary instruction. The trial court noted that the prosecutor had not made a cogent argument "as to how you weigh the computers in the house [count 2] on [the burglary charge] Count 1." The trial court said it was not permissible to infer defendant burgled the school for computer equipment, based on the evidence he possessed stolen computers in his house.

The trial court mistakenly believed, however, that the prosecutor had not urged the jury to draw any impermissible inferences. It thought the prosecutor had avoided making objectionable arguments after defense counsel's objection. The trial court said, "[I]'m not going to give a cautionary instruction on improper inferences from lack of evidence thereon unless such argument is made, and he hasn't made them. . . ." The trial court told the prosecutor, "You didn't ask them to make any unreasonable inferences, although you were trying to but never got to it. The value of a proper objection at the proper time."

The reporter's transcript indicates that the matter of a cautionary or limiting instruction was not raised again by the court or counsel. However, the clerk's transcript includes a copy of "Defense Special Instruction # 1" marked "Not Given."[5]     Where there are defects in a proposed instruction regarding other crimes evidence, the trial court must tailor the instruction "to give the jury some guidance regarding the use of the other crimes evidence, rather than denying the instruction outright." (*Falsetta, supra,* 21 Cal.4th at p. 924.)

Here, the trial court failed to give any cautionary or limiting instruction against considering the evidence on counts 2 in relation to count 1, and vice versa. Additionally, none of the other instructions ameliorated the prosecutor's or the trial court's errors. Notably, the jury was instructed not to consider the fact that count 3 was dismissed for any purpose, including defendant's guilt or innocence on counts 1 and 2.[6] But rather than ameliorate the prosecutor's closing argument errors, the jury probably understood this instruction to mean that it was free to use *all* of the evidence on counts 1 and 2 in reaching its decision on both counts. Indeed, just before closing argument, the trial court told the jury, "you're the ones who decide what the evidence is, what the evidence means, what inferences you can draw from the evidence, what inferences you cannot draw. And you are the finders of fact, and I'll instruct you further on that, but that's your job. So usually I say, folks, you decide the evidence."

The jury was also instructed that the attorney's statements were not evidence,[7] that each count charged a distinct crime, to decide each count separately, and that it could find defendant guilty or not guilty of either or both of the crimes charged in counts 1 and 2.[8] It was also instructed that the People had the burden of proving the defendant guilty beyond a reasonable doubt.[9] None of these instructions, considered separately or as a whole, ameliorated the prosecutor's argument or the trial court's instructional errors, particularly in view of the trial court's comment that the jury was free to decide what inferences it could draw from the evidence.

---

[5] The instruction stated that "[t]he admissibility of other crimes evidence for the purpose of proving identity depends on whether the offenses shared marks of distinction. Only common marks having some degree of distinctiveness tend to raise an inference of identity and thereby invest other crimes evidence with probative value. [¶] The strength of the inference in any case depends upon two factors: [¶] 1. the degree of the distinctiveness of individual shared marks, and [¶] 2. the number of minimally distinctive shared marks."

[6] The trial court gave a modified version of CALJIC No. 17.46. It stated, "The issue of guilt of the defendant as to Count 3 is no longer before you. Do not consider this fact for any purpose. It is not relevant as to whether the defendant is guilty or not guilty of the remaining counts."

[7] The jury was given CALJIC No. 1.02.

[8] CALJIC No. 17.02.

[9] CALJIC No. 2.90.

#### d. *The Evidence on Counts 1 and 2 Was Very Similar, and the Evidence on Count 1 Was Weak in Relation to Count 2*

" 'One danger in joining offenses with a disparity of evidence is that the State may be joining a strong evidentiary case with a weaker one in the hope that an overlapping consideration of the evidence [will] lead to convictions on both.' " (*Bean, supra,* 163 F.3d at p. 1085; accord, *Williams v. Superior Court* (1984) 36 Cal.3d 441, 453–454 [204 Cal.Rptr. 700, 683 P.2d 699].)

Here, the evidence on count 1 was weak compared to the evidence on count 2. Fingerprints taken from the computer found outside the classroom on May 1, 2001, did not match defendant's fingerprints, and defendant was not seen entering the interior portion of the school grounds. In contrast, the evidence that defendant received and was concealing stolen computer equipment in his home (count 2) was considerably stronger. He admitted purchasing the computer equipment in 1995 for $100. But other evidence showed that the computer equipment had been stolen from a school in 1998. Thus, the jury could have reasonably inferred that defendant lied about purchasing the computer equipment, and knew it was stolen.

■ Moreover, the evidence on counts 1 and 2 was very similar, because both involved computer equipment stolen from schools after school hours. Where, as here, the evidence on two counts is considerably similar, and is considerably stronger on one count than the other, it is *highly probable* that the jury will draw the impermissible conclusion that "because he did it before, he must have done it again." (*Bean, supra,* 163 F.3d at p. 1085.)

■ Prejudice does not arise from joinder when the evidence of each crime is "simple and distinct, even in the absence of cross-admissibility." (*Bean, supra,* 163 F.3d at p. 1085, citing *U.S. v. Johnson* (9th Cir. 1987) 820 F.2d 1065, 1071.)[10] Here, however, prejudice is highly probable because the evidence on counts 1 and 2 improperly bolstered the strength of the evidence on the other count.

Further, the assumption that the jury can compartmentalize the evidence, rather than consider it cumulatively, "cannot apply here, where the jury was not properly charged." (*Bean, supra,* 163 F.3d at p. 1085.) As we have explained, the prosecutor erroneously urged the jury to infer that defendant was guilty on count 1 because he was guilty on count 2, and vice versa. The trial court's instructions sanctioned these errors.

---

[10] Compare *Mendoza, supra,* 24 Cal.4th at page 163. There, the consolidated charges were "factually separable." "Thus, there was a minimal risk of confusing the jury or of having the jury consider the commission of one of the joined crimes as evidence of defendant's commission of another of the joined crimes." (*Ibid.*)

■ Defendant did not receive a fair trial. In combination, the similarity of the evidence on counts 1 and 2, the disparate strength of the evidence on each count, the prosecutor's improper closing argument, and the trial court's instructional errors had a substantial and injurious effect on both verdicts. For all these reasons, it is reasonably probable that the joinder affected the jury's verdict on both counts.

B. *Substantial Evidence Supported Defendant's Conviction in Count 2 for Concealing Stolen Property, Namely, the Computer Equipment Found in His Mother's Car*

Defendant contends there was insufficient evidence to support his conviction for *receiving* stolen property, namely, the computer equipment, as charged in count 2. He argues that there was insufficient evidence he (1) knew the computer equipment was stolen, or (2) possessed the computer equipment, because it was found in his mother's car in the garage of the home where he lived with his parents.

Defendant further contends the crime of receiving stolen property was barred by the three-year limitations period. (§§ 496, subd. (a) & 801.) He notes the evidence showed that the computer equipment was stolen in February 1998, more than three years before May 2, 2001, the date he was charged with receiving it. He also notes there was no evidence that he received the computer equipment after February 1998, or at any time within three years of May 2, 2001.

Although we reverse defendant's conviction on count 2, we consider these issues, because the double jeopardy clause would preclude retrial on count 2 if the evidence was insufficient to support it. (*U.S. v. Lewis, supra,* 787 F.2d at p. 1323.) As we explain, we agree that the offense of *receiving* stolen property was time barred. Defendant concedes, however, that he was also charged with *concealing* stolen property in count 2, and the jury was instructed that *concealing* stolen property was a form of *receiving* stolen property. We conclude there was substantial evidence that defendant concealed stolen property as charged in count 2.

■ The defense that a charged offense is barred by the applicable limitations period is jurisdictional and may be raised at any time. (*People v. Williams* (1999) 21 Cal.4th 335, 339 [87 Cal.Rptr.2d 412, 981 P.2d 42].) ■ It has been held that receiving stolen property and concealing stolen property are separate offenses. (*Williams v. Superior Court* (1978) 81 Cal.App.3d 330, 343 [146 Cal.Rptr. 311]; see also *People v. Allen* (1999) 21 Cal.4th 846, 861, fn. 14 [89 Cal.Rptr.2d 279, 984 P.2d 486].) The crime of receiving stolen property is complete when the defendant takes possession of property with knowledge it is stolen. (*Ibid.*)

As defendant argues, there was no evidence he received the computer equipment within three years of May 2, 2001, the date he was charged with receiving it. Thus, the offense of receiving stolen property was time barred.

■ Unlike the crime of receiving stolen property, however, the crime of concealing stolen property is a continuing offense. "It consists of the act of intentionally secreting stolen property in violation of the affirmative duty to return it . . . to its rightful owner." (*Williams v. Superior Court, supra,* 81 Cal.App.3d at pp. 343–344.) Both offenses are proscribed by section 496, subdivision (a).[11]

The jury was given a modified version of CALJIC No. 14.65. In accordance with section 496, subdivision (a), the instruction defined concealing stolen property as a form of receiving stolen property.[12] Additionally, substantial evidence showed that defendant was guilty of concealing stolen property.

"In reviewing a criminal conviction challenged as lacking evidentiary support, ' "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' [Citation.] The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] . . . An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396 [133 Cal.Rptr.2d 561, 68 P.3d 1].)

---

[11] Section 496, subdivision (a) provides, in pertinent part, that "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, *or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner,* knowing the property to be so stolen or obtained, shall be punished . . . ." (Italics added.)

[12] As given, CALJIC No. 14.65 provided: "The defendant is accused in Count 2 of having committed the crime of receiving stolen property, a violation of Section 496[, subdivision] (a) of the Penal Code. [¶] Every person who buys or receives any property which has been stolen or which has been obtained by theft or extortion, knowing the property to be stolen or so obtained, *or who conceals or withholds or aids in concealing or withholding property from the owner,* knowing the property to have been stolen or so obtained, is guilty of the crime of receiving stolen property in violation of Penal Code section 496[, subdivision] (a). [¶] In order to prove this crime, each of the following elements must be proved: [¶] (1) A person bought or received property which had been stolen or obtained by extortion; and [¶] *A person concealed or withheld or aided in concealing or withholding property from the owner* which had been stolen or obtained by extortion; and [¶] (2) The person actually knew the property was stolen or obtained by theft or extortion at the time he or she bought, received, and withheld or concealed or aided in concealing or withholding from the owner [of] the property." (Italics added.)

"A conviction for receiving stolen property cannot withstand appellate scrutiny unless substantial evidence was presented to the trier of fact that (1) *the property was received, concealed, or withheld by the accused*; (2) such property had been obtained by theft or extortion; and (3) the accused knew that the property. had been so obtained." (*People v. Kunkin* (1973) 9 Cal.3d 245, 249 [107 Cal.Rptr. 184, 507 P.2d 1392], italics added.)

"Possession of the stolen property may be actual or constructive and need not be exclusive. [Citations.] Physical possession is also not a requirement. It is sufficient if the defendant acquires a measure of control or dominion over the stolen property. [Citations.]" (*People v. Land* (1994) 30 Cal.App.4th 220, 223–224 [35 Cal.Rptr.2d 544], fn. omitted.)  ▇▇▇ A defendant's false statement concerning how he obtained property that was in fact stolen is sufficient to show the defendant knew the property was stolen. (*People v. Larke* (1966) 246 Cal.App.2d 571, 575–576 [54 Cal.Rptr. 834].)

Substantial evidence supported all three elements of the crime of concealing stolen property. On May 2, 2001, defendant told Officer Lung that he purchased the computer equipment in 1995 for $100. Additionally, a witness identified the computer equipment by its serial numbers as the same computer equipment that had been stolen from a school in 1998. This evidence supported a reasonable inference that defendant lied about purchasing it in 1995 and knew it was stolen. It also supported the inference that defendant possessed the computer equipment, and had continually possessed it through May 2, 2001, with knowledge that it was stolen.

Defendant further argues that the crime of concealing stolen property must be purposeful. He says the 1987 computer equipment was "discarded junk," and he had no purpose for concealing it. He maintains that *Williams v. Superior Court, supra,* 81 Cal.App.3d 330, supports this proposition. We disagree.  ▇▇▇ Defendant's continued possession of the property supports the inference that it had some value.

## DISPOSITION

The judgment is reversed.

Ward, Acting P. J., and Gaut, J., concurred.