Filed 11/30/21  P. v. Marrujo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075899 |
| v. | (Super.Ct.No. RIF1606065) |
| CHERYL DEE MARRUJO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Thomas E. Kelly, Judge. (Retired judge of the Santa Cruz Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part; reversed in part with directions.

Robert F. Somers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Cheryl Dee Marrujo, guilty of maintaining a methamphetamine drug house (Health & Saf. Code, § 11366; Count 4); possessing methamphetamine for sale (Health & Saf. Code, § 11378; Count 10); possessing heroin for sale (Health & Saf. Code, § 11351; Count 11); being under the influence of a controlled substance, which is a misdemeanor (Health & Saf. Code, § 11550, subd. (a); Count 9); and three counts of misdemeanor child abuse (Pen. Code,[1] § 273a, subd. (b); Counts 3, 5 & 6). The jury found true the allegation that defendant was on bail while possessing heroin for sale (Count 11). (Pen. Code, § 12022.1.) The trial court sentenced defendant to prison for a term of six years four months.

Defendant contends her conviction for maintaining a methamphetamine drug house (Count 4) should be reversed because the trial court erred by (1) consolidating cases; and (2) admitting evidence of uncharged misconduct. Defendant also contends the on-bail enhancement (§ 12022.1) should be reversed due to insufficient evidence and instructional error. The People concede the enhancement should be reversed. We affirm in part and reverse in part.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

**FACTUAL AND PROCEDURAL HISTORY**

A.      <u>DECEMBER 15, 2016</u>[2]

On December 15, 2016, at approximately 10:00 a.m., Riverside County Sheriff's deputies executed a search warrant at defendant's house in Perris. Ruben Marrujo (Husband) opened the door for the deputies.[3] The sound of a toilet flushing was heard as deputies entered the house. Suspects will often flush drugs down the toilet when law enforcement enters a house.

Defendant was in the master bathroom. Defendant appeared to be under the influence of a stimulant: her coordination was poor, her speech was rapid, her breath smelled bad, her facial muscles were clenched, her pupils were large, her eyes were bloodshot, and she had horizontal gaze nystagmus/involuntary eye movement. A urine test revealed that defendant was under the influence of methamphetamine.

---

[2] In Count 1, defendant was charged with maintaining a heroin drug house on December 15, 2016. (Health & Saf. Code, § 11366.) The jury found defendant not guilty on Count 1.

In Count 2, defendant was charged with felony child abuse (§ 273a, subd. (a)) pertaining to D.G., occurring on December 15, 2016. The jury found defendant not guilty of the felony and not guilty of the lesser included misdemeanor (§ 273a, subd. (b)).

In Count 3, defendant was charged with felony child abuse (§ 273a, subd. (a)) pertaining to M.P., occurring on December 15, 2016. The jury found defendant not guilty of the felony, but guilty of the lesser included misdemeanor (§ 273a, subd. (b)).

On Count 9, defendant was charged with misdemeanor being under the influence of a controlled substance, occurring on December 15, 2016. (Health & Saf. Code, § 11550, subd. (a).) The jury found defendant guilty on Count 9.

[3] Husband was defendant's codefendant in the trial court. This court previously issued an opinion in Husband's appeal. (*People v. Marrujo* (Dec. 30, 2020, E074406) [nonpub. opn.].)

In a second bedroom, i.e., not the master bedroom, were R.G., (age 14) and Francisco D. Francisco appeared to be under the influence of methamphetamine and marijuana. His speech was slow; his pupils "were as big as they could get"; he had puncture marks inside his right arm; and he had burn marks on the back of his tongue.

M.P. was defendant's son. He was born in 2002. M.P. was laying in the closet of a third bedroom. M.P. appeared healthy. D.G. was defendant's son. He was born in 2008. D.G. was at school during the search of the house on December 15, 2016.

In the living room, lying awake on a futon bed, were Joe E. and Lorena G. Near the futon, there were five used syringes and 0.4 of a gram of heroin. Heroin is typically injected. Lorena appeared to be under the influence of methamphetamine, heroin, and marijuana. Her speech was rapid; her pupils were smaller than normal and their reaction to light was very slow; and she had needle puncture marks on her arms. Also in the living room was a monitor that displayed video surveillance from outside the residence.

In the family room, lying on an air mattress, were Gabriela N. and G.V. Near the air mattress, there was used tinfoil, which can be used to smoke heroin or OxyContin. Gabriela appeared to be under the influence of methamphetamine, opiates, and marijuana. She had poor coordination; her speech was slow; and her pupils were small and slow to react to light.

Thomas M. and Adrian E were sitting at a table in the kitchen. In the garage, were Jesus R. and Bernadette D. Two pipes for smoking methamphetamine were in the garage. In total, 14 people were found in the residence. Also found in the house were

4

two small handheld scales for weighing ounces or grams, and a pay/owe sheet for tracking drug payments and debts. A large quantity of drugs or cash was not found in the house on December 15, 2016.

B.   JANUARY 25, 2017[4]

On January 25, 2017, at approximately 5:00 p.m., a Child Protective Services social worker and a group of Sheriff's deputies, including members of the Riverside County Sheriff's Department's Drug Endangered Children Unit, went to defendant's house to check if defendant's children were safe.

The smell of marijuana was wafting from the garage. Husband was in the doorway of the garage. Husband's speech was rapid; his pupils were large; and he had eyelid tremors. A urine test later confirmed that Husband was under the influence of methamphetamine.

Joseph G. and Cesar M. were in the garage and appeared to be under the influence of methamphetamine. Joseph's speech was slow; his pulse was elevated; his pupils were dilated; and his muscles were rigid. Cesar's speech was rapid; his pupils were dilated; he had eyelid tremors; and he had an elevated pulse.

---

[4] On Count 4, the jury found defendant guilty of maintaining a methamphetamine drug house (Health & Saf. Code, § 11366), occurring on January 25, 2017.

On Count 5, the jury found defendant guilty of misdemeanor child abuse of D.G., occurring on January 25, 2017. (§ 273a, subd. (b).)

On Count 6, the jury found defendant guilty of misdemeanor child abuse of M.P., occurring on January 25, 2017. (§ 273a, subd. (b).)

Count 7, pertained only to Husband. Count 8 was dismissed.

5

Also in the garage, on a shelf or an exposed beam, was a baggie containing 12.8 grams of methamphetamine. A scale was near the methamphetamine. The shelf/beam was approximately four feet high. Children's BMX bicycles were in the garage. If a child consumes methamphetamine, the child could become ill or die. Three baggies of marijuana were in the garage. One baggie was located on a couch, approximately two feet off the ground. D.G. and M.P. were both over two feet tall. There was a large monitor in the garage that showed a live surveillance feed of the front of the house. Inside the house were Francisco, G.V., Gabriela, defendant, M.P., and D.G. Francisco, G.V., and Gabriela appeared to be under the influence of methamphetamine. Francisco's speech was rapid; his eyes were bloodshot; his pulse was elevated; and his pupils were large. G.V.'s speech was slow; he had an elevated pulse; and his eyelids drooped. Gabriela's speech was slow; she had an elevated pulse; she had eyelid tremors; and her muscles were rigid. There were no smoke detectors in the house; they had all been detached from their mountings.

C.    AUGUST 28, 2017[5]

Riverside County Sheriff's deputies executed a search warrant at defendant's house on August 28, 2017, after 8:00 p.m. Four people were inside the home: defendant, Husband, M.P., and a nephew of either defendant or Husband.

---

[5] On Count 10, the jury found defendant guilty of possessing methamphetamine for sale on August 28, 2017. (Health & Saf. Code, § 11378.)
    On Count 11, the jury found defendant guilty of possessing heroin for sale on August 28, 2017. (Health & Safe. Code, § 11378.)

6

In the master bathroom, under the sink, deputies found methamphetamine and heroin. The heroin was individually packaged and ready for sale. Heroin is typically sold in 0.1 of a gram increments. The individual packages of heroin weighed 0.15 of a gram, the extra 0.05 of a gram was the plastic packaging. One large plastic bag held 34 small bindles of heroin. There were 17 small bindles of methamphetamine, the majority of which weighed approximately 0.25 of a gram. Altogether, the 17 bindles of methamphetamine weighed 14.15 grams. There were nine more small bindles of methamphetamine that altogether weighed 5.25 grams.

Three digital scales were in a nightstand drawer in the master bedroom. A bag of balloons was in the master bedroom; balloons can be used for packaging drugs. A box for a prepaid cellphone was in the master bedroom. Drug dealers often use prepaid cellphones because it is difficult to trace them back to their owners. There was a baby monitor in the master bedroom. The cameras for the baby monitor were mounted under the eaves of the house to show the front yard. People involved in drugs sales will use surveillance cameras to alert them to law enforcement in order to flush drugs down the toilet or hide drugs. Riverside County Sheriff's Investigator Rhodes opined that the methamphetamine in the house was possessed for sale due to the quantity of the drug, the packaging, and the scales.

A cell phone was also found in the master bedroom. The phone had multiple text messages on it. One incoming message from July 3, 2017, read, "How much white would you give me for this bike?" along with a photograph of a bicycle. "White" refers to methamphetamine. A responding outgoing message read, "I don't have any white. If

7

I did, I would do it." That message meant the responding party did not have any methamphetamine, but if she did then she "would do the deal."

Another incoming message to the phone, dated August 19, 2017, from a person named Robert, read "Hey, G[6], good morning. Well, call me when you have it because I have the—and then money signs—money right now." Another message read, "Okay . . . $40 right now for black." "Black" refers to heroin.

An incoming message dated August 25 read, "I got you on your G and a half of white." "G" likely referred to a gram of heroin, while "a half of white" likely referred to a half ounce of methamphetamine. An outgoing response read, "Can you bring it? We are having car problems."

An incoming message from a person named Gabby read, "Hey, Girl, are you up? I need one." The message is asking if her drug dealer has drugs available. Gabby asked if a trade was acceptable for payment. The outgoing message reflected no trades would be accepted. On July 25, Gabby wrote, "Hey, [defendant], are you home?" On August 13, Gabby wrote, "Would you guys take a women's Bulova watch and two gig memory for a camera for black?" An outgoing message read, "My husband just bought me a Rolex." On August 26, Gabby wrote, "Hey, [defendant], can I come back for one?" "One" refers to a small package of heroin.

Another incoming message read, "I'm here at the liquor store." The next incoming message read, "How much can you sell a gram of black?" The message was

_____

[6] Defendant's nickname is Giggles.

8

asking the price for a gram of heroin. The outgoing response was, "If we do it, will be 90," which means it will cost $90 for a gram of heroin. The text messages added to Investigator Rhodes's belief that the methamphetamine and heroin were possessed for the purpose of being sold.

### D. UNCHARGED CONDUCT

#### 1. *EVIDENCE*

On May 23, 2018, at approximately 5:00 p.m., Riverside County Sheriff's deputies executed a search warrant at defendant's home. No one responded to the deputy knocking on the door, so deputies used a ram to open the door. Husband exited the master bedroom. The door of the master bathroom was closed. Deputy Pulido heard the toilet flushing. Defendant was inside the master bathroom. In front of the toilet, on the ground, was a small plastic baggie of heroin. On the floor of the master bedroom, next to the bed, was more heroin wrapped in plastic. A syringe filled with 80 ccs of heroin was underneath a pillow on the bed, in the master bedroom. A glass pipe for smoking methamphetamine, a digital scale, plastic baggies, and additional syringes were found in the master bedroom.

In the attic, deputies found more scales, more small plastic baggies, small balloons, and more syringes. Defendant appeared to be under the influence on May 23, 2018.

#### 2. *MOTION IN LIMINE*

The prosecutor moved in limine to introduce evidence of the events of May 23, 2018. In the written motion, the prosecutor argued defendant would likely argue that

9

she did not intend to the sell the drugs or she was not aware of the presence of the drugs in the house. The prosecutor asserted the May 23, 2018, evidence was relevant to establishing defendant's "long pattern of narcotics sales," which would demonstrate motive, intent, lack of mistake, and knowledge.

At the hearing on the motion, defendant opposed the motion asserting that the evidence was inadmissible, but not offering a specific argument. Husband's attorney asked the trial court, "[U]nder what section of [Evidence Code section] 1101(b) [is the Court] going to allow it in; if it's intent, absence of mistake, motive, plan, or scheme." The trial court replied, "All of the above."

The jury instruction regarding the May 23, 2018, evidence provided, in relevant part, "If you decide that the defendants committed the uncharged acts, you may, but are not required to, consider that evidence for the limited purpose of deciding whether: [¶] The defendant acted with the intent to maintain a place for the unlawful sale or unlawful use of a controlled substance; [¶] The defendant knew both the controlled substance was heroin and the purpose for its possession when he/she allegedly acted in this case; or [¶] The defendant had a plan or scheme to commit the offenses alleged in this case."

E.     CONSOLIDATION

The original complaint in Riverside County Superior Court case No. RIF1606065 (the first case) was filed on December 20, 2016. In that original complaint, defendant was charged with the offenses that occurred on December 15, 2016. On January 24, 2018, a first amended felony complaint was filed in the first case. The amended complaint added allegations pertaining to January 25, 2017.

10

On May 25, 2018, the prosecutor moved to consolidate the first case with Riverside County Superior Court case No. RIF1703237 (the second case), which pertained to the offenses that occurred on August 28, 2017. The prosecutor asserted the two cases involved the same class of crimes, in that each involved allegations pertaining to drugs and child abuse. The prosecutor asserted defendant would suffer no prejudice from the consolidation because the cases involved events occurring "within months of one another, both happened at the same residence . . . and there is nothing inherently inflammatory in either case."

Defendant opposed the motion to consolidate. Defendant conceded that the statutory requirements for consolidation were met, but asserted the consolidation was prejudicial and would violate her right to a fair trial. Defendant asserted a jury would be more likely to convict her if it heard the evidence of both cases.

The trial court said, "[I]t does appear that the evidence is largely cross-admissible as well as all [involving] the same class of crime." The trial court granted the motion for consolidation.

F.     CLOSING ARGUMENT

During closing argument, defendant's trial counsel asserted, "There is absolutely no evidence whatsoever that there is a repeated and continuous use of a place for drugs on a regular basis, and they had the specific intent to do so. [¶] They had a party one night. They had a lot of people over; the people were still there the next day. Not great, but that is not evidence of continuous use. On the 25th, there was a couple people over, but there is no drugs found, only in the garage. . . . The standard is that other people are

11

there on a continuous basis, not once, not twice, but all the time, repeated and continuous. And I would argue that that is just not present. There is no evidence of repeated and continuous."

As to the 12.8 gram bag of methamphetamine found in the garage on January 25, 2017, defendant's trial counsel argued that the drugs were in the garage, while defendant was inside the house. Counsel argued that defendant was not under the influence on January 25, and "[defendant] that day was just being a mom."

## DISCUSSION

### A.     BACKGROUND

On Count 4, defendant was convicted of maintaining a drug house for the purpose of selling, giving away, or abusing methamphetamine on a continuous or repeated basis. (Health & Saf. Code, § 11366.)

The elements of the offense of maintaining a drug house " 'are that the defendant (a) opened or maintained a place (b) with a purpose of continuously or repeatedly using it for selling, giving away, or using a controlled substance.' " (*People v. Franco* (2009) 180 Cal.App.4th 713, 721.) " '[E]vidence of a single, isolated instance of the sale of narcotics, standing alone, without any other corroborating circumstances of which the defendant is shown to have any knowledge, is not legally sufficient to prove that [s]he was "maintaining" [a] place . . . for the purpose of selling narcotics.' " (*People v. Horn* (1960) 187 Cal.App.2d 68, 73 (*Horn*).) Thus, "a single or isolated instance of misconduct does not suffice to establish a violation." (*People v. Vera* (1999) 69 Cal.App.4th 1100, 1102 (*Vera*).)

12

B.    UNCHARGED ACT EVIDENCE

Defendant contends her conviction for maintaining a methamphetamine drug house (Health & Saf. Code, § 11366) (Count 4) should be reversed because the uncharged act evidence was more prejudicial than probative (Evid. Code, § 352).

Evidence that "a person committed a crime, civil wrong, or other act" is admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident [. . .]) other than his or her disposition to commit such an act."  (Evid. Code, § 1101, subd. (b).)  The trial court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice." (Evid. Code, § 352.)  We apply the abuse of discretion standard of review.  (*People v. Rogers* (2006) 39 Cal.4th 826, 862-863.)

The prosecutor had to prove that the unlawful drug activity at the house was continuous or repeated.  (*Horn*, *supra*, 187 Cal.App.2d at p. 73.)  The May 23, 2018, evidence established the fourth instance of unlawful drug activity at the house, which aided in establishing that the drug activity was continuous or repeated.[7]  The direct evidence of May 23, 2018, evidence established that heroin was in the house. Circumstantial evidence established that methamphetamine had been in the house.  In particular, defendant was in the bathroom, a toilet had been heard flushing, and a

_____

    [7]  It likely would have been more clear if the prosecutor had alleged Count 4 occurred between December 2016 and May 2018, rather than alleging Count 4 occurred on January 25, 2017, and treating the May 2018 evidence as uncharged act evidence (Evid. Code, § 1101, subd. (b)).

13

methamphetamine pipe was in the master bedroom. One could infer from that evidence that defendant had flushed methamphetamine down the toilet.

The uncharged act evidence was also probative on the issue of knowledge.

For the charge of maintaining a drug house, there must be evidence of a defendant's knowledge of the ongoing unlawful drug activity occurring in the house. (*Horn*, *supra*, 187 Cal.App.2d at p. 73.)

The evidence from the charged crimes did not directly place defendant in the same room as the drugs. By contrast, the May 23, 2018, evidence directly placed defendant in the master bathroom with a baggie of heroin. Because defendant was in the bathroom, heroin was on the bathroom floor, and there had been the sound of a toilet flushing, the May 23, 2018, evidence tended to establish that defendant was disposing of the drugs, and thus (1) knew the drugs were in the house, and (2) knew they were unlawful narcotics. The evidence of defendant's knowledge helped to clarify that defendant maintained the house for unlawful drug related purposes. In sum, the uncharged offense evidence was relevant to Count 4.

Defendant contends that the May 23, 2018, evidence was not probative on the issue of knowledge because "her knowledge of illegal drugs in her house was never in dispute." Defendant fails to cite to a stipulation in the record reflecting the prosecutor was relieved of the burden of proving knowledge. Because it appears the prosecutor bore the burden of proving knowledge, defendant's argument is unpersuasive.

Defendant asserts the May 23, 2018, evidence was not probative of maintaining a drug house because defendant's family members were the only people at the house that day. Although people were not gathered at the home abusing drugs on May 23, 2018, one could reasonably infer from the heroin in the home; the drug paraphernalia in the home, including a methamphetamine pipe; and evidence of defendant flushing the toilet, with heroin on the bathroom floor, that the home was still being maintained for the purpose of selling, giving away, or abusing methamphetamine.

Defendant asserts the May 23, 2018, evidence was more prejudicial than probative because (1) that evidence was stronger than the January 25, 2017, evidence in terms of demonstrating that defendant possessed drugs; (2) the jury likely believed defendant would not be punished for the May 23, 2018, incident because there were no charges for that incident; and (3) the jury was likely angered by defendant still being involved with drugs after the three charged incidents.

The evidence of May 23, 2018, was not stronger than the evidence of January 25, 2017. Defendant was convicted of maintaining a methamphetamine drug house. The evidence of May 23, 2018, only circumstantially involved methamphetamine, in that one could infer, based on the methamphetamine pipe in the master bedroom, that defendant flushed methamphetamine down the toilet. By contrast, the January 25, 2017, evidence directly involved methamphetamine, in that a 12.8 gram bag of methamphetamine was in the garage and a scale was nearby. Because the January 2017 evidence included direct evidence of methamphetamine, it was stronger than the May 2018 evidence.

15

Next, in regard to the jury possibly being concerned about the lack of punishment for the May 23, 2018, events, we stress that the offense of maintaining a drug house requires proof of repeated or continuous incidents. (*Vera*, *supra*, 69 Cal.App.4th at p. 1102.) The jury instruction for Count 4 used the words "continuous or repeated." (CALCRIM No. 2440.) Thus, the jury could reasonably conclude that the Count 4 conviction encompassed the May 23, 2018, incident, as part of the "continuous or repeated" conduct. Therefore, it is not reasonably likely that the jury was concerned about a lack of punishment.

Next, we address the possible anger issue. The jury acquitted defendant of maintaining a heroin drug house (Count 1) and acquitted her of the felony child abuse charges (Counts 2 and 3). Given the acquittals on multiple charges, it does not appear that the jury was angry with defendant. In sum, the May 23, 2018, uncharged act evidence had probative value and the prejudicial effect was minimal. Therefore, we conclude the trial court did not err by allowing the evidence pertaining to May 23, 2018.

C. CONSOLIDATION

Defendant contends her Count 4 conviction for maintaining a methamphetamine drug house should be reversed because the trial court erred in consolidating the two cases. Defendant further asserts that the consolidation violated her right of due process. As a reminder, the first case involved the December 2016 and January 2017 incidents, and the second case involved the August 2017 incident.

16

Two cases may be consolidated when they involve "different offenses of the same class of crimes." (§ 954.) In defendant's opposition to the motion, she conceded that "the statutory requirements for permissive joinder arguably have been met." We understand defendant to have conceded that the charges concerned the same class of crimes.

" 'When, as here, the statutory requirements for joinder are met, a defendant must make a clear showing of prejudice to establish that the trial court abused its discretion' " in granting a motion for consolidation. (*People v. Grant* (2003) 113 Cal.App.4th 579, 586 (*Grant*).) Prejudice may be established where: (1) evidence from the two cases would not be cross-admissible in separate trials; (2) charges in one of the cases are more inflammatory; or (3) one of the cases is "weak" while the other case is "strong," such that the outcome of the "weak" case could be changed by being joined with the "strong" case. (*Id.* at pp. 586-587.)

" '[C]ross-admissibility ordinarily dispels any inference of prejudice.' " (*People v. Grant*, *supra*, 113 Cal.App.4th at p. 587.) As set forth *ante*, maintaining a drug house requires evidence of continuous or repeated offenses; an isolated incident on January 25, 2017, would "not suffice to establish a violation." (*Vera*, *supra*, 69 Cal.App.4th at p. 1102.) Therefore, if there had been a separate trial of the first case, then evidence from the second case would have been admissible in that trial to demonstrate that there had been repeated drug-related offenses at the house. In particular, the evidence of multiple bindles of methamphetamine and text messages about methamphetamine

17

would have been relevant in proving continuous or repeated methamphetamine-related activity at the house.

Defendant asserts the evidence from the second case would not have been admissible because it was more prejudicial than probative. (Evid. Code, § 352.) Defendant asserts the evidence from the second case was not probative because it established a distinct incident of drug sales, which is unlike the first case involving being under the influence. Therefore, defendant reasons, the second case was not probative of continuous or repeated drug activity.

On December 15, a toilet was heard flushing, defendant was in the bathroom, and multiple people in the house were under the influence of drugs. That is similar to the May 28 evidence in which defendant was in the bathroom, a toilet was flushing, and heroin on was on the floor. Thus, one could infer that defendant was flushing drugs down the toilet on December 15. Further, on December 15, inside the house, there were small scales, a pay/owe sheet, and video surveillance of the front yard. From this evidence one could infer that the drugs that were flushed on December 15 had been available for sale.

On January 25, there was a 12.8 gram bag of methamphetamine in the garage and multiple people at the house were under the influence of methamphetamine. There was also a scale near the bag of methamphetamine. One could infer that the methamphetamine in the garage was available for sale or for giving away.

18

Thus, the evidence of individually packaged drugs and text messages about drug sales on August 28 was not evidence of a distinct event. Rather, it was evidence of the ongoing drug related activity at defendant's home. Accordingly, we are not persuaded that the August 28 evidence lacked probative value.

In regard to prejudice, defendant contends the jury would have been at risk of being misled about defendant maintaining a drug house, if evidence from the second case were admitted in a separate trial of the first case, because "[n]o evidence from January 25 proved that [defendant] was involved in her husband's drug activity," i.e., defendant was not in the garage with the bag of methamphetamine. There was circumstantial evidence of methamphetamine abuse inside the house on January 25, such as missing smoke detectors and people under the influence of methamphetamine. Accordingly, one could reasonably infer that drug activity stretched from the garage into the house. Thus, there appears to be little risk that the jury would have been misled. In sum, we are not persuaded that evidence from the second case would have been excluded from a separate trial in the first case.

As to the next issue, defendant contends the second case was stronger than the first case and therefore they should not have been consolidated. On December 15, 2016, there were numerous people in the house who appeared to be under the influence of drugs and some had track marks on their arms. Inside the house and garage there were syringes, heroin, used tinfoil for smoking drugs, pipes for smoking methamphetamine, small scales for measuring ounces or grams, and a pay/owe sheet. There was also a monitor with a live surveillance feed of the front of the house.

On January 25, 2017, two people in the garage appeared to be under the influence of methamphetamine and there was a baggie containing 12.8 grams of methamphetamine in the garage. Husband, who was in the doorway of the garage, tested positive for methamphetamine. There was a monitor in the garage with a live surveillance feed of the front of the house. Inside the house, three people appeared to be under the influence of methamphetamine. All the smoke detectors in the house had been removed.

The number of people in the house who were consistently under the influence of methamphetamine on December 15, 2016, and January 25, 2017, overwhelmingly demonstrated that people came to defendant's house to abuse methamphetamine. The 12.8 gram bag of methamphetamine, the pipes for smoking methamphetamine, and the lack of smoke detectors indicated that the people consumed the methamphetamine at the house. The multiple monitors with live surveillance feeds indicated there were serious concerns about law enforcement approaching the house, likely due to the ongoing methamphetamine consumption at the house. The scales and pay/owe sheet indicated that drugs were being sold at the house.

In sum, the evidence of December 15, 2016, and January 25, 2017, was strong in proving that, on two occasions, the house was used for selling, giving away, or abusing methamphetamine. However, to prove continuous or repeated conduct, more than two incidents would be preferable. Thus, this is not a case in which a "weak" case was consolidated with a "strong" case. Rather, these were two strong cases that were

consolidated in order to establish repeated or continuous unlawful drug activity occurred in the house.

Defendant asserts the December 15, 2016, evidence was weak because the jury found her not guilty of maintaining a heroin drug house on that date. The evidence was weak in terms of proving that defendant maintained a heroin drug house because the majority of people at the house appeared to be under the influence of methamphetamine—not heroin. Count 4, which is the count defendant is asserting should be reversed, concerned maintaining a methamphetamine drug house, and the evidence pertaining to methamphetamine was strong. Accordingly, that the jury acquitted defendant of maintaining a heroin drug house is not persuasive in arguing the methamphetamine evidence was weak.

Defendant contends the January 25, 2017, evidence was weak because the 12.8 gram bag of methamphetamine was found in the garage, while defendant was inside the house, which indicates she "was not part of the activities occurring in the garage." Defendant was inside the house on January 25. On that day, the smoke detectors in the house had been removed, and three people in the house appeared to be under the influence of methamphetamine. One could reasonably infer from this evidence that the drug activity stretched from the house to the garage, and thus defendant was involved in the drug activity despite not being in the garage. Accordingly, the January 25, 2017, evidence was not weak.

21

As to the final issue involving prejudice, defendant contends the second case was more inflammatory because the jury was likely angry that defendant remained involved with drugs after the incidents in the first case. The jury acquitted defendant on felony child abuse charges (Counts 2 and 3) and the charge of maintaining a heroin drug house (Count 1). Therefore, there is no indication that the jury was angered by the evidence in the second case. Accordingly, the trial court did not abuse its discretion in granting the motion for consolidation.

Despite a trial court's ruling on a motion to consolidate being correct at the time it was made, we must reverse if the defendant can demonstrate the consolidation " ' "actually resulted in 'gross unfairness' amounting to a denial of due process." [Citation.] [Citation.] '[E]rror involving misjoinder "affects substantial rights" and requires reversal . . . [if it] results in actual prejudice because it "had substantial and injurious effect or influence in determining the jury's verdict." ' " (*Grant, supra,* 113 Cal.App.4th at p. 587.) Thus, "the defendant must demonstrate a reasonable probability that the joinder affected the jury's verdicts." (*Id.* at p. 588.) Defendant's arguments regarding prejudice are discussed *ante*. We conclude actual prejudice was not demonstrated. Therefore, defendant was not denied due process.

D.     CUMULATIVE ERROR

Defendant contends her Count 4 conviction should be reversed due to the cumulative prejudicial effect of the alleged errors in consolidating the cases and admitting the uncharged offense evidence. We have concluded the trial court did not

err.  Therefore, we have nothing to cumulate.  (Cf. *People v. Duff* (2014) 58 Cal.4th 527, 562.)

E.    ON-BAIL ENHANCEMENT

1.    *PROCEDURAL HISTORY*

During the trial, the prosecutor presented evidence of defendant's bail bond stemming from the December 2016 arrest.  The jury found true the allegations that defendant was on bail during the felonies in Counts 4, 10, and 11.  (§ 12022.1.)

At sentencing, the prosecutor asserted the enhancement for Count 4 should be stricken, due to the jury acquitting defendant on Count 1.  The trial court agreed, explaining, "There was an acquittal for the felony conduct on 15 December of '16, so [the] January episode would not have a 12020.1 [*sic*] enhancement."  The trial court struck the enhancement in Count 10 because Counts 10 and 11 pertained to the same day and the on-bail enhancement could only be used once because it "is a status enhancement, it's not a conduct enhancement."  The trial court imposed a consecutive two-year prison term for the on-bail enhancement in Count 11.

2.    *ANALYSIS*

Defendant contends the on-bail enhancement in Counts 10 and 11 should be reversed due to insufficient evidence and instructional error.  The trial court struck the enhancement in Count 10, so we construe defendant's argument as limited to Count 11. The People concede the enhancement should be reversed.

23

"[S]ection 12022.1 on-bail enhancements are not imposed unless the defendant is ultimately convicted of the 'primary' and 'secondary' offenses." (*People v. McClanahan* (1992) 3 Cal.4th 860, 869.) " 'Primary offense' means a felony offense." (§ 12022.1, subd. (a)(1).) Thus, the enhancement requires a primary felony, for which a defendant is released on bail, then a secondary offense committed while the defendant is on bail, and then the defendant must be convicted of both the primary felony and the secondary offense.

In the instant case, the prosecutor provided evidence of defendant's December 2016 bail bond. The jury did not convict defendant of a felony for the December 2016 incident. Therefore, there is no primary offense in this case. As a result, the on-bail enhancement (§ 12022.1) in Count 11 must be reversed.

We turn to the issue of defendant's sentence. "[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) "The invalidity of one component [of the sentence] infects the entire [sentencing] scheme." (*People v. Hill* (1986) 185 Cal.App.3d 831, 834.)

In light of the enhancement being reversed, the two-year prison sentence for the enhancement can no longer stand. Therefore, we will reverse the entirety of defendant's sentence so the trial court may resentence defendant. Further, the abstract of judgment reflects defendant's Count 11 conviction for possessing heroin for sale (Health & Saf.

Code, § 11351) is a violent felony; that error should be corrected upon completion of a new abstract of judgment. (Pen. Code, § 667.5, subd. (c) [list of violent felonies].)

## DISPOSITION

The on-bail enhancement (Pen. Code, § 12022.1) in Count 11 is reversed. The entirety of defendant's sentence is reversed. The trial court is directed to resentence defendant. In completing a new abstract of judgment, Count 11 (Health & Saf. Code, § 11351) should not be marked as a violent felony. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

SLOUGH
J.

RAPHAEL
J.

25